**In re L. Joyce HAMPERS, Appellant.**

**No. 81–1159.**

United States Court of Appeals,
First Circuit.

Argued April 6, 1981.

Decided May 20, 1981.

Barbara A. H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Div., Boston, Mass.,

with whom Francis X. Bellotti, Atty. Gen., Stephen R. Delinsky, Chief, Crim. Bureau, and Roberta Thomas Brown, Asst. Atty. Gen., Boston, Mass., were on brief, for appellant.

Ernest DiNisco, Sp. Atty., Dept. of Justice, Washington, D. C., with whom Edward F. Harrington, U. S. Atty., Jeremiah T. O'Sullivan, Sp. Atty., Dept. of Justice, and Douglas P. Woodlock, Asst. U. S. Atty., Boston, Mass., were on brief, for appellee.

Francis V. Dow, Asst. Atty. Gen., Albany, N. Y., with whom Robert Abrams, Atty. Gen., and Shirley Adelson Siegel, Sol. Gen., Albany, N. Y., were on brief, for the Attorney General of the State of New York, amicus curiae.

Paul M. Stein, Boston, Mass., with whom Edward F. Hines, Jr., George A. Berman and Choate, Hall & Stewart, Boston, Mass., were on brief for the Boston Bar Ass'n, amicus curiae.

Richard E. Mastrangelo, Associate Counsel, Boston, Mass., on brief for the Associated Industries of Massachusetts, amicus curiae.

Kenneth W. Bergen and Bingham, Dana & Gould, Boston, Mass., on brief for the Massachusetts Society of Certified Public Accountants, amicus curiae.

Robert Abrams, Atty. Gen., Albany, N. Y., and Wilson L. Condon, Atty. Gen., Juneau, Alaska, on brief of the Attorneys General of the States of New York, Alaska, Connecticut, Minnesota, New Mexico, North Dakota, Oregon and South Dakota, amici curiae.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

COFFIN, Chief Judge.

A federal Special Grand Jury, investigating an arson-insurance fraud scheme, and deeming the burning of one restaurant and lounge suspicious, desired to probe the motives of the owner. An Alcohol, Tobacco and Firearms investigation had assertedly revealed that the restaurant and lounge at the time of the fire owed the Commonwealth of Massachusetts a substantial amount of meals and beverage taxes which it was unable to pay.[1] Accordingly, the grand jury issued a subpoena duces tecum to appellant, the Commissioner of Revenue for Massachusetts, ordering her to appear and testify before the grand jury and bring documents relating to the sales tax on meals and beverages for the corporate owner of the restaurant for the period from October 1977 to October 1978.

Such documentation is subject to the provisions of Mass.Gen.Laws c. 62C, §§ 21 and 22, prohibiting disclosure of tax return information filed with the Commissioner except under certain specified circumstances, the most relevant of which are tax determination or collection proceedings and certain state criminal prosecutions. Violation is punishable by fine, imprisonment, and disqualification from office. Citing this statute and alleging the subpoena to be oppressive, obstructive of the Commonwealth's taxing functions, and violative of an asserted privilege covering such documents under Rule 501 of the Federal Rules of Evidence, appellant moved to quash the subpoena. This motion was denied but appellant continued in her refusal to comply. The United States moved to compel production and after a hearing the district court ordered production.

Appeal from this order was dismissed by us for lack of appellate jurisdiction, there being no contempt adjudication. Subsequently appellant, continuing her non-compliance, added the argument that enforcement of the subpoena would compel her to incriminate herself, in violation of the Fifth Amendment. The district court found her in contempt, holding that even if the Massachusetts law would not recognize an exception covering disclosure to a federal grand jury investigation, the Supremacy Clause commands the state law to give

---

1. The facts are taken from documents filed with the public record in this case, and do not rely upon an impounded affidavit filed with the district court by the Assistant U. S. Attorney conducting the investigation.

way; this being so, compliance with the federal subpoena would not subject appellant to criminal prosecution and the Fifth Amendment is not implicated.

The United States first asserts that the state statute might be construed to allow such disclosure. The Commonwealth argues that its statute cannot be read to imply an exception for grand jury investigations, citing the legislature's elimination, in 1923, of permissible disclosure "by proper judicial order", St.1923, c. 402 § 1. *See Leave v. Boston Elevated Railway*, 28 N.E.2d 483, 306 Mass. 391 (1940); *Finance Commission of Boston v. Commissioner of Revenue*, Mass.Adv.Sh. (1981) 593, —— Mass. ——, 417 N.E.2d 945 (1981). This proposition not being refuted by the United States, and being generally consistent with the rest of the statutory scheme, we accept it for our analysis.

■■■■ We therefore turn to the issues presented if the statute cannot be read to allow disclosure. The Commonwealth invests considerable effort in its belated Fifth Amendment argument. This, we feel, is misdirected. While indeed the authority invoked by the Commonwealth, *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), recognized that the possibility of incrimination under state law could prevent federal compulsion of testimony absent a grant of immunity from state prosecution, the possible incrimination in *Murphy* lay in the facts to be revealed by testimony and not in the fact of testifying itself. When compliance with a federal subpoena compelled by the Supremacy Clause is at the same time the only act which could be a violation of state law, there remains no room for state law sanction. *See In re Grand Jury Subpoena, May, 1978 at Baltimore*, 596 F.2d 630, 632 (4th Cir. 1979); *In re Grand Jury Subpoena for the Production of Certain New York State Sales Tax Records*, 382 F.Supp. 1205 (W.D. N.Y.1974).

The Commonwealth's remaining argument is that its nondisclosure statute creates a privilege which should be recognized in federal court, one "governed by the principles of common law as they may be interpreted by the Courts of the United States in the light of reason and experience." Rule 501, Federal Rules of Evidence.[2] It stresses, as countervailing weights against the federal interest in disclosure, the following:

—The long standing confidential nature of state tax returns, an attribute conferred on such data by many other states, said to be a critical factor in stimulating voluntary compliance with the tax laws (unlike the after-the-fact, bizarre effort to seal records containing putative evidence of actions violative of individuals' constitutional rights found in *American Civil Liberties Union of Miss. v. Finch*, 638 F.2d 1336 (5th Cir. 1981)).

—The federal statutory scheme established in 26 U.S.C. § 6103(i)(1), which permits disclosure of tax return information in non-tax criminal investigations only on the order of a district judge, which is to be issued only if an applicant has shown (i) reasonable cause to believe a crime has been committed; (ii) reason to believe the information is probative of a matter in issue concerning the criminal act, and (iii) that the information "sought to be disclosed can not reasonably be obtained from any other source" or (even if it can be so obtained) the information "constitutes the most probative evidence" of a matter in issue, and which subjects disclosure to the added veto of the Secretary of the Treasury if he determines that a confidential informant would be identified or a tax investigation would be impaired by the disclosure. Appellant points out that if a federal grand jury or prosecutor can obtain tax information by the simple expedient of serving a subpoena on a state tax commissioner, the safeguards of § 6103 can be ignored and circumvented.

2. Proposed Fed.R.Evid. 502, not accepted by Congress, would have recognized an across-the-board privilege for any records required by law not to be disclosed. Its rejection has no compelling significance since courts remain free to recognize a privilege in a proper case. *See United States v. King*, 73 F.R.D. 103, 104–05 (E.D.N.Y.1976) (Weinstein, J.).

—The availability of another source of the information, e. g., the taxpayer itself (who can obtain disclosure under Section 21 of c. 62(C)), and the absence of any efforts by the United States to exhaust such sources.

The United States argues that compelled disclosure is warranted by deference to the grand jury, by virtue of the "mantle of confidentiality" governing grand jury proceedings under Fed.R.Crim.P. 6(e), by the need to avoid delaying tactics, and by a restrained approach to expanding any bars to disclosure of evidence.[3] It rehearses the small but consistent body of case law discussed below, refusing to accord a privilege in federal criminal cases to claims based on state confidentiality statutes. And it minimizes the "generalized interest" in confidentiality as an inducement to voluntary tax declaration that the Commonwealth articulates in support of its claimed privilege.

Both the Commonwealth and the United States, however, join in recognizing the relevance of *American Civil Liberties Union of Miss. v. Finch, supra,* for its analytical approach. The reason for this unusual concord on process, leading to dramatically opposite arguments, is that *Finch* did not accord privileged status to records sealed by state law in a federal civil case—a fact seized upon by the United States—but emphasized that the state law involved was a last minute effort to blot out records of actions violating individuals' constitutional rights—facts exploited by the Commonwealth. As both parties recognize, however, the general balancing of interests undertaken in *Finch,* weighing the importance of the disclosure sought in the federal prosecution against the potential injury caused a state by disclosure, has been consistently utilized by the several courts to consider the issue. *See, e. g., In re Grand Jury Subpoena, May, 1978 at Baltimore, supra; Matter*

*of Special April 1977 Grand Jury,* 581 F.2d 589, 592–93 (7th Cir. 1978); *Matter of Grand Jury Impaneled Jan. 21, 1975,* 541 F.2d 373, 378–83 (3d Cir. 1976).

We accordingly adopt the series of inquiries followed in *Finch.* The first is whether the courts of Massachusetts would recognize such a privilege. For reasons we have already stated we think the Massachusetts courts would. As Judge Wisdom recognized, however, honoring such a privilege in federal court will usually involve some cost to the federal interest in seeking the truth in federal question cases. It makes a difference whether the federal interest in seeking full disclosure is a weak or strong one. In *Finch* there was a strong interest; the whole purpose behind § 1983 was to insure an independent federal forum for testing alleged constitutional violations by state officials. Here we are in a gray area. Assisting federal grand juries in their criminal investigations is generally a strong interest. But where the information sought is only corroborative of what investigators have alleged on the basis of other information, is seemingly ascertainable from sources other than state tax returns, and addresses only one aspect of a non-tax-related crime, the federal interest looms less. As to the state's interests, while there was by contrast no reliance interest in *Finch,* all agree that for many years taxpayers in Massachusetts have been assured confidentiality in the treatment of their returns. And, so we were informed at oral argument, the federal government has only rarely, perhaps two times in the past year or so, sought to breach this barrier.

Proceeding to the closer and more difficult inquiry whether the state's asserted privilege is "intrinsically meritorious in our independent judgment", *American Civil Liberties Union of Miss. v. Finch, supra,* at 1343, we follow *Finch's* expedient of adopt-

---

**3.** The United States stresses particularly the Supreme Court's refusal in *United States v. Gillock,* 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980), to recognize a privilege for state legislators paralleling that of United States Senators and Congressmen. *Gillock,* however, is distinguishable in at least two sig-

nificant respects: first, the state provision at issue was in terms a limit only on the prosecution powers of the state; second, the federal interest there included a federal criminal statute whose very purpose might have been frustrated by recognition of the privilege asserted. *Id.* at 374, 100 S.Ct. at 1193, 1194.

ing the four tests of Wigmore. *Accord, United States v. King,* 73 F.R.D. 103, 105–09 (E.D.N.Y.1976) (Weinstein, J.). The first is whether the communications originate in a confidence that they will not be disclosed. The answer is and for a long time has been "Yes". The second is whether this element of confidentiality is essential to "the full and satisfactory maintenance of the relation between the parties." *Id.* at 1344. On this issue each side overargues. The United States blithely asserts that criminal and other sanctions provide more than enough teeth to guarantee continued compliance with the tax laws. The Commonwealth invokes the specter of Doomsday if the slightest enforced breach of confidence occurs. Our view is that while selective disclosure in cases where rigorous criteria have been met would most probably have little or no effect on the state's reporting system, easy and automatic recourse to tax return information by federal grand juries or—if there were no privilege whatsoever—by competitors, creditors, prospective purchasers or other litigants in federal court might eventually have an adverse impact on the state-taxpayer relationship. That such a relationship, to address Wigmore's third test briefly, is a vital one, which "ought to be sedulously fostered", *id.* at 1344, would seem to be beyond dispute.

Wigmore's fourth inquiry is whether "the *injury* that would inure to the relation by the disclosure of the communications [would be] *greater than the benefit* thereby gained for the correct disposal of litigation." *Id.* at 1344 (emphasis in *Finch* ). This is the query that drives us to seek a more particularistic answer than the macrocosmic one that effective federal criminal law enforcement is more important than state tax collection. We can easily see that if a state tax return contained the only key to resolving a serious federal crime, the balance would tilt in favor of the federal government. *See In re Grand Jury Subpoena for N.Y. State Income Tax,* 468 F.Supp. 575 (N.D.N.Y.1979). But if a return contained information that would be easily obtained elsewhere and at best would constitute only cumulative evidence impeaching one of several witnesses, we might have second or third thoughts.

Being charged as we are under Rule 501 to look to reason and experience in charting a federal evidentiary common law, we think the key has already been forged by the Congress in legislating in 26 U.S.C. § 6103(i)(1) the conditions under which federal tax information may be made available to federal officials for non-tax criminal purposes. The deliberate judgment of the legislature on the balancing of the societal interests in detecting, preventing, and punishing criminal activity, in safeguarding individuals' interests in privacy, and in fostering voluntary compliance with revenue reporting requirements, seems to us a legitimate if not compelling datum in the formation of federal common law in this area. *See Moragne v. States Marine Lines,* 398 U.S. 375, 390–91, 90 S.Ct. 1772, 1782–83, 26 L.Ed.2d 339 (1970), Landis, *Statutes and the Source of Law,* in Harvard Legal Essays 213, 226–27 (1934).

■ We see no reason why, if federal prosecutions are not unduly hindered by the restraints of § 6103, they would be so hindered by applying the same rules to state tax returns. We see a positive virtue in avoiding either any circumvention of § 6103 or inconsistency in rules of access to federal and state tax information. And we see value in preserving in this small area the postures of comity and deference arising from federalism.

■ We therefore hold that appellant in this case enjoys a qualified privilege under Rule 501 because of the state nondisclosure statute and that, in order to enforce a subpoena in federal criminal investigation, a federal grand jury must proffer reasonable cause to believe that a federal crime has been committed, that the information sought will be probative of a matter at issue in the prosecution of that crime, and that the same information or equally probative information can not be obtained elsewhere through reasonable efforts. While well-supported requests for subpoenas may occasionally be opposed by those in appel-

lant's position, we would predict little success and would expect appeals to be infrequent. We also note that this is a criminal, and not a civil case.

The district court did not explicitly address the three factors set forth in the preceding paragraph. Assessing those factors may or may not require fact-finding hearings and an opportunity for presentation of evidence. Accordingly, we remand this case to the district court for such a determination.

*The judgment is vacated and the cause remanded for further proceedings. No costs.*