COMMONWEALTH OF
MASSACHUSETTS

v.

**FIRST NATIONAL SUPERMARKETS, INC., The Stop & Shop Companies, Inc., Waldbaum, Inc.**

**Civ. A. No. 85–3835–K.**

United States District Court, D. Massachusetts.

June 30, 1987.

See also, D.C., 112 F.R.D. 149.

Dorothy Anderson, Margaret Zaleski, Asst. Attys. Gen., Antitrust Div., Public Protection Bureau, Boston, Mass., for Com. of Mass.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, Donald L. Shuck, Jr., Donald B. Gould, Mark Pearlstein, Goodwin, Procter & Hoar, Boston, Mass., for Stop & Shop.

David L. Foster, Richard L. Klein, Willkie Farr & Gallagher, New York City, James S. Dittmar, Richard J. Yurko, Widett, Slater & Goldman, P.C., Boston, Mass., for Waldbaum, Inc.

Seymour Glanzer, Justin Simon, Andrew Miller, Dickstein, Shapiro & Morin, Washington, D.C., Tani E. Hofferman, Windsor Locks, Conn., for First National.

## MEMORANDUM AND ORDER ON MOTION OF THE DEFENDANT THE STOP & SHOP COMPANIES, INC. TO COMPEL THE COMMONWEALTH TO PRODUCE DOCUMENTS CONCERNING THE DEPONENT RAYMOND KORFANT (# 90)

ROBERT B. COLLINGS, United States Magistrate.

In August, 1984, the defendants Stop & Shop and Waldbaum were charged in the second count of a two-count indictment returned by the United States Grand Jury in Connecticut with conspiring to terminate double coupons which both were offering to consumers at retail stores in Connecticut and Massachusetts. In April, 1985, both corporations pleaded *nolo contendere* to the charge and fines were imposed.

In October, 1985, the Commonwealth of Massachusetts (hereinafter, the "Commonwealth"), filed a complaint charging the defendants with violating the Sherman Antitrust Act, 15 U.S.C. §§ 1, 15 and 26. The Commonwealth brought the action on behalf of Massachusetts consumers who were damaged by the alleged unlawful conspiracy to terminate the double coupon program.

During the pendency of this civil case, the Commonwealth served a Civil Investigatory Demand (hereinafter, a "C.I.D.") upon one Raymond Korfant, a former officer of the co-defendant, First National Stores, Inc., in March, 1986. The C.I.D. was issued pursuant to a state statute, M.G.L.A. Chapter 93, § 8, which enables the Attorney General of Massachusetts to investigate trade practices that violate state law. Specifically, the statute provides that if the attorney general has "reasonable cause to believe" that a violation of the Massachusetts Antitrust Act, M.G.L.A. Chapter 93, is or may be occurring or will occur, he may, before instituting suit, cause a C.I.D. to be served on any individual requiring the production of documents,

the answering of interrogatories or the giving of oral testimony. So far as appears, the Commonwealth demanded that Mr. Korfant give oral testimony; he complied with the demand and gave oral testimony on April 5, 1986.

The Commonwealth avers that it was investigating Mr. Korfant's participation in conspiracies to terminate double coupons and to fix the prices of turkeys and eggs "... and was considering filing an antitrust action against Mr. Korfant and other individuals in state court pursuant to Chapter 93."[1] The Commonwealth further states that it decided not to bring a case against Mr. Korfant but that it did file a state antitrust action against Kenneth Charles, a former Stop & Shop employee, in May 1986.

The Commonwealth now seeks to take the deposition of Mr. Korfant in the instant case pursuant to the Federal Rules of Civil Procedure. Counsel for Stop & Shop thereupon sought production of the oral testimony given by Mr. Korfant pursuant to the C.I.D. and a copy of any correspondence between the Commonwealth and Mr. Korfant's attorneys. The Commonwealth objected to production. The instant motion followed.

The Commonwealth opposes production of the transcript of the oral testimony given pursuant to the C.I.D. on the basis of the provisions of the state statute, Chapter 93, § 8, which provide, in pertinent part:

> All information and documents, including answers to interrogatories, transcripts, or testimony, produced documents, and all copies thereof, which are obtained by the attorney general in the course of any investigation under this

chapter shall be held in the custody of the attorney general, shall be kept confidential by the attorney general, and shall not be disclosed by the attorney general to any person except as necessary in a case brought by the attorney general under this Act.

In addition, the statute requires that transcripts and documents be returned to the person who provided the testimony and documents upon completion of a case brought under the state act. Mr. Korfant received a copy of the transcript of his oral testimony but has refused, on the basis of the statute, to provide Stop & Shop with a copy.[2]

In this federal question case, a federal court's recognition of a privilege created by state law is determined by the mandate of Rule 501, F.R.Evid., which reads, in pertinent part:

> ... the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

The recognition of state privileges under Rule 501 "envisions the flexible development of the federal common law of privilege on a case-by-case basis." *In re Production Of Records To Grand Jury*, 618 F.Supp. 440, 442 (D.Mass., 1985) citing *United States v. Gillock*, 445 U.S. 360, 367, 100 S.Ct. 1185, 1190–91, 63 L.Ed.2d 454 (1980). Stop & Shop's motion presents just such an instance demanding flexible analysis of the factual circumstances of the case at hand. This is an instance of first impression because the particular Massachusetts statutory privilege in question has not

---

**1.** The precise subject matter of the investigation, as set forth in the C.I.D. was "agreements to fix the prices of meat, dairy and grocery items for which manufacturers' coupons were issued by conspiring to eliminate double coupons offers in supermarkets operated by First National Supermarkets, Inc. and its competitors in Massachusetts and Connecticut in the years 1979 through 1981; and agreements to fix the retail prices of turkey and eggs in supermarkets operated by First National Supermarkets, Inc. and

its competitors in Massachusetts in the years 1978 through 1981."

**2.** In a letter to Stop & Shop's counsel dated August 15, 1987, Mr. Korfant's counsel wrote that "... Mr. Korfant objects pursuant to Civil Rule 45 to providing copies of the transcripts of the Civil Investigatory Demand. Pursuant to Massachusetts law, such materials are not to be disseminated. Disclosure would violate the policy interests contemplated in that statute."

been discussed in the federal case law. The previous federal cases discussing state privilege deal with different privileges and distinguishable factual situations. *See e.g. American Civil Liberties Union of Mississippi v. Finch*, 638 F.2d 1336 (5 Cir., 1981) (state statutory privilege enacted after records created and litigation initiated); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100 (3 Cir., 1982) (state accountant-client privilege).

Although the opinions of some federal courts have contained broad language implying an absolute precedence of federal practices over state law privileges, *e.g. Wm. T. Thompson Co. v. General Nutrition Corp., supra*, 671 F.2d at 104, the governing case law in the First Circuit and the District of Massachusetts has accepted and even encouraged the possibility of recognizing state privileges in appropriate cases. As stated explicitly by Judge Young, "federal courts should recognize state evidentiary privileges where this can be accomplished at no substantial cost to federal and procedural policy." *In re Production Of Records To Grand Jury, supra*, 618 F.Supp. at 442 citing *In re Jury Impanelled January 21, 1981*, 535 F.Supp. 537, 541 (D.N.J., 1982); *Schafer v. Parkview Memorial Hospital*, 593 F.Supp. 61, 63 (N.D.Ind., 1984) (both citing *United States v. King*, 73 F.R.D. 103, 105 (E.D. N.Y., 1976)). Indeed, both parties in this case acknowledged in oral argument that the First Circuit's decision in *In re Hampers*, 651 F.2d 19 (1 Cir., 1981) provides the governing tests for determining recognition of a state privilege by this court.

The *Hampers* case set forth four tests which the Court must employ in balancing the state and federal interests involved in sustaining the assertion of a state-law privilege in a federal case. These have been phrased as follows:

1. Would the courts of Massachusetts recognize such a privilege?

2. Is the state's asserted privilege "intrinsically meritorious in [the court's] independent judgment"?

3. Should such a privileged relationship be "sedulously fostered"?

4. Is injury that would inure to the relation by the disclosure of the communication greater than the benefit thereby gained?

*In re Production Of Courts To Grand Jury, supra*, 618 F.Supp. at 443 citing *In re Hampers, supra*, 651 F.2d at 22–23.

Applying these tests to the privilege generally, the first three of the four questions would be answered in the affirmative. There is nothing to indicate that the Massachusetts courts would not give effect to the confidentiality provisions of the statute. The privilege is, in my view, "intrinsically meritorious"—indeed, precisely the same privilege is contained in Federal law respecting the materials which the Attorney General of the United States receives pursuant to civil investigative demands which he is empowered to issue. *See* 15 U.S.C. § 1313(c)(4). In general, the privilege should be "sedulously guarded" since the confidentiality which it insures is a basic component of the means by which the Attorney General obtains evidence of violations of the anti-trust act; his ability to obtain such evidence might well be compromised if the protections of the privilege were not applicable.

Both the *Hampers* and the *In re Production Of Records To Grand Jury* cases seem to indicate that these first three questions are to be answered in a general way without reference to the specific context in which the privilege is asserted in the particular case under consideration. *Hampers, supra* at 22–23; *In re Production Of Records To Grand Jury, supra* at 443. However, it is possible to ask the questions against the backdrop of the specific factual context of the case in which the privilege is asserted.

Asking the questions in this way, the first question would then be whether the Massachusetts courts would sustain the Commonwealth's assertion of the privilege in the circumstances of the instant case. The immediate answer is that they would never get the opportunity since it is not

possible to bring an action under the Federal anti-trust laws, such as this, in state court. The second question then is whether the Massachusetts courts would sustain the Commonwealth's assertion of the privilege in the instant case if the case were brought under the Massachusetts Antitrust Act. The answer to this question is probably not. It is to be recalled that M.G.L.A. Chapter 93, § 8 prohibits disclosure of materials obtained through a civil investigative demand to any person "... except as necessary in a case brought by the attorney general under this Act." Thus, by the very terms of the statute creating the privilege, Massachusetts courts would not "recognize" the privilege in the face of a need to disclose the material in a state action brought by the Attorney General under the state act.

It would follow that since the state statute creating the privilege has an exception allowing disclosure in certain circumstances, assertion of the privilege in those circumstances could not have been thought by the state legislature to be "intrinsically meritorious" and, thus, could hardly be found to be so by the federal court. Nor should the privilege protecting the confidentiality of the materials be "sedulously fostered" in those circumstances.

I shall not pursue this line of reasoning because the fourth factor or question listed in the *Hampers* case, i.e. whether the injury which would inure to the relation by the disclosure of the communication is greater than the benefit thereby gained, clearly requires an analysis based on the assertion of the privilege in the specific factual context in which it is asserted in the particular case before the Court.

In my opinion, in the circumstances of this case, the injury to the relation by the Court's disclosure of C.I.D. information "as necessary" is minimal as compared to the benefit thereby gained for the correct disposal of the litigation. The state legislature evidently was of that view when it granted the state court the power to disclose C.I.D. information "as necessary" in cases brought by the Attorney General un-

der the Massachusetts statute. There is no reason why the same calculus does not apply when the action is brought in federal court under a federal statute. At bottom, what the Commonwealth is attempting to do is to assert a state privilege in a federal case to bar disclosure of materials which a state court would have the power to disclose "as necessary" if the action had been brought in state court under an analogous state statute. The position is unsound in logic, law and policy.

An example suffices to make the point. The Massachusetts statute provides for three different kinds of discovery. These are "documentary material", "interrogatories in writing under oath" and "oral testimony". The confidentiality provision applies to all three, although the dispute in the instant case deals only with a transcript of oral testimony. However, suppose that the Commonwealth had issued a C.I.D. seeking documentary evidence to Mr. Korfant and he had produced documents in response thereto which were probative on the issue of Stop & Shop's liability in this case. Can it seriously be argued that the Commonwealth could, on the basis of the state privilege, withhold the documents from Stop & Shop's counsel on a Rule 34 request? Of course not. If the Attorney General had brought the action in state court under the state statute, the state court would undoubtedly find disclosure of the documents "necessary". Any argument that the privilege should prevent disclosure when the action is brought as a federal case because the state statute creating the privilege limits disclosure to when necessary in a case brought under the state statute exalts form over substance.

■ In sum, I find that the federal court has the power to order disclosure of C.I.D. information "as necessary" in an action brought under federal law when the C.I.D. information was obtained by means of the state statute. I do so because I find that in those circumstances, the injury which would inure to the relation (between the Commonwealth and providers of the C.I.D. information) is minimal compared to the

benefit thereby gained for the correct disposal of the litigation.

This conclusion does not, in and of itself, determine what disposition should be made of Stop & Shop's motion. The Court must decide whether the disclosure of the C.I.D. information sought, i.e. the transcript, is "necessary". I can find no cases under the Massachusetts anti-trust act which provide guidance as to the standards to apply in determining whether disclosure is "necessary". It may well be that when the Commonwealth brings a civil action under the Massachusetts anti-trust act in state court, C.I.D. materials which relate to the case are routinely turned over to counsel for the defendants. The Commonwealth's brief hints that this is so but does not say so explicitly. *See* Memorandum of the Commonwealth, Etc. (# 108) at p. 16. However, there do not appear to be any Massachusetts cases dealing with the "as necessary" language; there is also nothing before me from which I could determine what occurs in actual practice in state court when discovery is sought of a prior C.I.D. transcript in a civil action brought under the Massachusetts antitrust act.

In these circumstances, the Court looks for guidance to the practice under the analogous provisions of the Federal Antitrust Civil Process Act. The legislative history indicates that disclosure of C.I.D. material is routine when the Attorney General of the United States secures material pursuant to a C.I.D. under the Antitrust Civil Process Act and then brings a civil action in federal court based on what was obtained through the C.I.D. The House Report on the Antitrust Civil Process Act Amendments of 1976 (94th Congress, Report No. 94–1343) reads, in pertinent part:

> [I]nformation submitted pursuant to a CID will remain confidential, and will be available to no one during the investigation except Division attorneys, the CID recipient, his counsel, and under certain circumstances, the FTC. However, if a civil action based on the CID information is subsequently commenced, the defendants in the civil action may invoke their full discovery rights under the Federal Rules of Civil Procedure, and obtain CID material relevant to their defense, in accordance with those rules. They will thus be fully able to protect their rights at trial by interrogating, cross-examining and impeaching CID witnesses both during pre-trial discovery, and at the trial itself. (footnote noting that matter sought to be discovered be "relevant" omitted).

1976 *United States Code Congressional And Administrative News,* 96th Congress, 2d Session at pp. 2572, 2609–10.

It is of note that the Department of Justice, in a letter to Congressman Rodino dated January 22, 1976, made the following statement in response to a perceived criticism of the C.I.D. procedures, wrote the following:

> It has been asserted by some that under the new Federal Rules of Evidence, Rule 802(d)(1), CID oral deposition testimony would be admissible at trial as proof of the matters asserted. It is argued that this rule is unfair to the defendant because he had no opportunity to cross-examine the witness during the oral deposition.

> Rule 802(d)(1) would authorize the introduction of CID oral deposition testimony as non-hearsay in two limited circumstances. First, when the deponent testifies at trial, is subject to cross-examination concerning his CID statements, and those statements are inconsistent with his trial testimony, then the CID statements are admissible to prove the truth of the matters asserted. No unfairness is involved in this case because the defendant may cross-examine the deponent concerning his CID statements.

*Id.* at 2632.

The obvious inference to be drawn from this discussion is that the witness' CID statements would have been provided to the defendant in discovery so that the defendant at trial could cross-examine the deponent "concerning his C.I.D. statements".

I can find no cases dealing with the situation in which a defendant in a civil action brought by the United States under the Federal antitrust acts seeks discovery of transcripts of oral testimony given by witnesses in the C.I.D. proceedings which preceded the filing of the suit. I can only assume that they are routinely disclosed in such a situation. I also have been unable to find any cases dealing with the same question in suits brought by other Federal agencies which have powers similar to those granted to the Justice Department in the Antitrust Civil Practice Act.

In these circumstances, I rule that disclosure of Mr. Korfant's C.I.D. testimony, to the extent that it relates to the allegations of the Complaint in the instant case, is "necessary". Mr. Korfant is a resident of Ohio and cannot be compelled to come to Boston to testify at trial. While the Commonwealth indicates that it expects Mr. Korfant to appear in Boston for trial voluntarily, there is no guarantee that this expectation will be fulfilled. Therefore, counsel for Stop & Shop will have to be prepared to cross-examine Mr. Korfant at the deposition as if Mr. Korfant were appearing at the trial. He should have the benefit of Mr. Korfant's C.I.D. testimony (to the extent that it relates to the allegations of the Complaint) for this purpose.

To the extent that Stop & Shop's motion seeks an order compelling documents reflecting communications between Mr. Korfant's counsel and counsel for the Commonwealth, the main thrust of Stop & Shop's argument is that these documents will provide evidence of promises, rewards, or inducements to Mr. Korfant in connection with his testimony or agreements respecting his testimony. Stop & Shop's counsel shall have full opportunity at Mr. Korfant's deposition to question him on the subject of what promises, rewards and/or inducements have been made or given to him in connection with his testimony. Prior to the deposition, the Commonwealth shall produce all documents which *constitute* a promise, reward and/or inducement to Mr. Korfant or any agreements concerning his proposed testimony.

Therefore, it is ORDERED that the Motion Of The Defendant The Stop & Shop Companies, Inc. To Compel The Commonwealth To Produce Documents Concerning the Deponent Raymond Korfant (# 90) be, and the same hereby is, ALLOWED in part and DENIED in part. The Commonwealth is ORDERED, pursuant to Rule 37(a)(2), F.R.Civ.P., to produce to counsel for Stop & Shop (1) those portions of the oral testimony of Raymond Korfant given in response to a C.I.D. which relate to the allegations of the Complaint and (2) all documents which *constitute* any promises, rewards and/or inducements made or given to Mr. Korfant by the Commonwealth in connection with his testimony in this case or any agreements between Mr. Korfant and the Commonwealth concerning said testimony.

Production is to be made *on or before the close of business on Monday, July 20, 1987.*