STERLING MERCHANDISING, INC., Plaintiff

v.

NESTLE, S.A., et al, Defendants.

Civil No. 06–1015(SEC).

United States District Court, D. Puerto Rico.

Dec. 29, 2006.

---

ADA Sofia Esteves, David C. Indiano–Vicic, Jeffrey M. Williams–English, Seth Erbe, Indiano & Williams, PSC, Javier A. Morales–Ramos, Javier A. Morales Ramos Law Office, San Juan, PR, PHV Jennifer Cotner, PHV Kevin J. O'Connor, Lafollete Godfrey & Kahn, Madison, WI, for Plaintiff.

Luis A. Oliver–Fraticelli, Roberto A. Camara–Fuertes, Fiddler, Gonzalez & Rodriguez, Lavinia Aparicio–Lopez, Commonwealth Department of Justice, Javier I. Arbona, Quinones, Sanchez & Guzman, PSC, San Juan, PR, for Defendants.

### OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

On May 22, 2006, Defendants asked the Court to quash the subpoena issued by the Plaintiff to the Department of Justice (DOJ) on May 16th, 2006 (hereinafter "the subpoena"). Docket # 32. Per that subpoena, Plaintiff seeks to inspect a complete file of documents under the DOJ's control. This file was compiled pursuant to a business review process initiated by Defendants in the DOJ to obtain its legal opinion on the viability of a business transaction, in view of the Puerto Rico Anti–Monopoly Act (hereinafter Act 77). *See,* 10 L.P.R.A. § 261(c)(hereinafter "the business review process"). Plaintiff opposed Defendants' motion (Docket # 35).[1] On August 9, 2006, Plaintiff moved to compel the DOJ to comply with the subpoena that Defendants are moving to quash (Docket # 55). The DOJ opposed said motion (Docket # 57) and at the same time asked the Court to quash the Subpoena. Having reviewed the filings and the applicable law, Plaintiff's Motion to Compel (Docket # 55) will be

---

1. Defendants replied to Plaintiffs's opposition (Docket # 38) and Plaintiff surreplied (Docket # 44).

**GRANTED,** Defendants' motion to quash the subpoena (Docket # 32) will be **DENIED** and the DOJ's motion (Docket # 57) will be **DENIED.** We address the parties' and the DOJ's arguments separately.

*Defendants' motion to quash:*

Defendants move to quash the subpoena pursuant to FED.R.CIV.P. 45(c)(3)(A)(iii), which provides that "[o]n timely motion, the Court by which a subpoena was issued shall quash or modify the subpoena if it ... requires disclosure of privileged or other protected material and no exception or waiver applies." They argue that the subpoena orders the DOJ to permit the inspection of documents that are privileged by law, specifically by Act 77. Defendants contend that they voluntarily filed some documents to the DOJ to obtain its legal opinion on the viability of a business transaction pertaining to Defendants, in view of Act 77. They claim that Act 77 makes those documents confidential. *See,* 10 L.P.R.A. § 261(c). In the alternative, they aver that the law enforcement investigatory privilege is applicable. Finally, they contend that the subpoena should be quashed because it is not signed by the Plaintiff's Attorney.

▆▆▆ Ordinarily, a person other than that against whom the subpoena was issued, lacks standing to move to quash the subpoena. An exception applies when the movant raises a claim of privilege. *See, Thomas v. Marina Associates,* 202 F.R.D. 433, 434 (D.Pa.2001). Defendants' argument that the documents sought to be disclosed by the subpoena are privileged pursuant to Act 77 or to the law enforcement investigatory doctrine, falls within this exception.

▆▆▆ Plaintiff, in turn, argues that *Colon Cabrera v. Caribbean Petroleum Corporation,* 2006 WL 1050042 (TCA Feb. 28, 2006) (hereinafter *Cabrera*), puts to rest Defendants' contention regarding the purported Act 77 privilege. In that opinion, the Puerto Rico Court of Appeals (P.R. Court of Appeals) held that the Act 77 provisions did not comply with the constitutional standards created by the Puerto Rico Supreme Court regarding laws that provide a confidentiality cloak to otherwise public information, and therefore, could not serve as a basis to withhold information from the Plaintiff. The P.R. Court of Appeals also noted that part of the information requested by the Plaintiff in that case was already accessible to the public in a criminal case file. Finally the P.R. Court of Appeals found it unreasonable to permit the DOJ to withhold information regarding conduct they were obligated to prosecute and punish. Defendants argue that the Court is not bound by this decision, and that its holding is legally flawed.[2]

---

2. At this point, it is worth mentioning that the Antitrust Division (AD) of the United States Department of Justice has a business review process, parallel to that available under Act 77, 10 L.P.R.A. § 261(c). *See,* 28 C.F.R. § 50.6. The AD may, upon request of a party, "state its present enforcement intention with respect to the proposed business conduct." 28 C.F.R. § 50.6(8). The opinion issued by the AD pursuant to that process states only the enforcement intention of the Division, who remains free to bring whatever action it deems appropriate to protect the public interest. *See,* 28 C.F.R. § 50.6(9).

Defendants asserted in their motion to quash that the holding of *Cabrera* was legally flawed because "[o]ne need look no further than the federal counterpart to the Puerto Rico Antitrust Act, as well as half a century of regulatory practice by the Federal Trade Commission, to find both 'a reason for being' of the confidentiality provision of the [Act] and a 'compelling government interest' for creating such confidentiality." Docket # 32, p. 6.

Despite Defendants' contention, the business review process available in the AD of the U.S. Department of Justice does not protect

Notwithstanding *Cabrera*, if in fact Act 77 created a privilege for the documents voluntarily disclosed to the DOJ as part of the business review process, it would not apply in a federal court of its own force. *See, American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1343 (5th Cir.1981)(hereinafter *Finch*). The instant case is before the Court by means of federal question jurisdiction because Plaintiff's claims arise under the Sherman Act and the Clayton Act. *See,* Docket # 1, p. 2. Plaintiff also seeks redress under Act 77, which is a state-law claim that remains in the Court by means of supplemental jurisdiction. Since this case arises out of federal question jurisdiction, FED.R.EVID. 501 applies. This rule provides, in essence, that when the claims before the court are based in state law, the state privileges apply; but when the claims are based in federal law, the common law privileges apply.

In spite of the distinction made by the FED.R.EVID. 501, it has been held that when the information made privileged by state law "is relevant for both the federal and the state claims, the movant must rely upon a privilege developed by the federal courts and not state law privileges." *Sirmans v. City of South Miami*, 86 F.R.D. 492, 495 (S.D.Fl.1980); *see also, Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 226 (D.Ma.1997); *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir.1992); *Wm. T.*

*Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir.1982)(holding that "when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility ... is the controlling rule". The Court found this approach "consistent with the rule in federal practice disfavoring privileges not constitutionally based."). Such is the case here.

 Notwithstanding the above, privileges created by state law may be considered by the federal courts, in appropriate cases, because "a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Finch*, 638 F.2d at 1343. Because privileges have the effect of preventing disclosure of information that is relevant to a case, they are disfavored in federal practice. *Id.* at 1344. Therefore, in determining whether to recognize a state law privilege that has no federal counterpart, federal courts utilize a balancing test, weighing the importance of the policies behind the state-law privilege against the federal policies favoring disclosure. *Id.* The test is a two-prong question: (1) whether the state courts would recognize the purported state-law privilege, and (2) whether the federal court, applying its own independent judgment, finds that the state's asserted privilege is "intrinsically

the information provided by the parties seeking the AD's opinion on a proposed business transaction. On the contrary, the law provides that "the business review request, and the Division's letter in response shall be indexed and placed in a file **available to the public upon request.**" 28 C.F.R. § 50.6(10)(a)(our emphasis). It also provides that "the information supplied to support the business review request and any other information supplied by the requesting party in connection with the transaction that is the subject of the business review request, shall

be indexed and placed in a file with the request and the Divisions' letter, **available to the public upon request.**" 28 C.F.R. § 50.6(10)(b)(our emphasis). The parties requesting the review, however, may ask the AD, prior to the creation of this index, not to publish certain information, by showing good cause therefor. *See,* 28 C.F.R. § 50.6(10)(c).

These business review letters are available in the website of the U.S. Department of Justice. *See, http:www.usdoj.gov./atr/foia/ foiapublicdocs.htm.*

meritorious". *In re Hampers*, 651 F.2d 19, 22 (1st Cir.1981)(hereinafter *Hampers*).

■ The "intrinsically meritorious" test, applied by the First Circuit in *Hampers*, adopts a four-tier test: (1) the communications must have originated in a confidence that they will not be disclosed, (2) the element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties, (3) the relation must be one that the community believes should be sedulously fostered, and (4) the injury that would inure to the relation by the disclosure of the communications is greater than the benefit thereby gained for the correct disposal of the litigation. *See, Hampers*, 651 F.2d. at 23.

As explained above, the test followed by the First Circuit in determining whether to apply a state-law privilege in a federal question case that includes pendent state-claims is governed by a policy of comity to the states. Therefore, the Court's inquiry starts by asking whether the courts of Puerto Rico would recognize such a privilege. In this case, there is no authority from the Puerto Rico Supreme Court on the issue. Nonetheless, the P.R. Court of Appeals held in *Cabrera* that the Act 77 should not be interpreted as creating a privilege for the documents submitted by the Defendants in that case to the DOJ as part of a DOJ's investigation.[3] Although we recognize that *Cabrera* is not binding upon the Court, it is of great persuasive value in applying the *Hampers* test. It would make little sense to apply the *Hampers* test, which is based on comity to the states, only to conclude that a state court

erred in finding that the privilege did not exist. The *Hampers* test requires us to go no further. We will not apply the Act 77 purported privilege in this case.

■ Defendants provided an alternative foundation for their claim of privilege which is based on federal law: the law enforcement investigatory privilege. This argument must fail since the law enforcement investigatory privilege "may be invoked only by government law enforcement authorities." *Three Crown L.P. v. Salomon Brothers, Inc.*, 1993 WL 277182, at *1 (S.D.N.Y. July 21, 1993), *quoting, In re Sealed Case*, 856 F.2d 268, 271–272 (D.C.Cir.1988)(hereinafter *Sealed*); *see also, U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 687 (S.D.Ca.1996). Furthermore, the law enforcement investigatory privilege requires that: (1) a formal claim of privilege is made by the head of the department in control of the requested information, (2) the assertion of privilege is based on actual personal consideration by the official raising the claim of privilege, and (3) the information for which the privilege is claimed is specified and an explanation given as to why the information falls within the scope of the privilege. *See, Sealed*, 856 F.2d. at 271; *see also, In re Polypropylene Carpet Antitrust Litigation*, 181 F.R.D. 680, 687 (D.Ga.1998); *U.S. v. Winner*, 641 F.2d 825, 831 (10th Cir.1981); *Black v. Sheraton Corp.*, 564 F.2d 531 (D.C.Cir.1977). None of these requirements have been met in this case. Even if the requirements were met, the privilege is not absolute, since "it can be overridden in appropriate cases by the need for the privileged materials." *Id.* at

---

3. Although the documents requested by the Plaintiff in that case were compiled by the DOJ pursuant to 10 L.P.R.A. § 271, and not 10 L.P.R.A. § 261(c), the language in both sections regarding the confidentiality of the documents in the same. Moreover, the rationale applied by the P.R. Court of Appeals in *Cabrera* made no distinction between the sections.

688.[4] Therefore, Defendants' claim of privilege under the law enforcement investigatory doctrine, is unavailing.

■■■ Furthermore, a motion to quash based on a claim of privilege must comply with FED.R.CIV.P. 45(d)(2)(A), which provides that:

> "[w]henever information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made **expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.**"(emphasis added).

■■■ Defendants argue that they need not comply with the rule because: (1) Act 77 makes **all** information provided to the DOJ privileged, regardless of its content, and (2) they cannot describe documents that are not under their control. We already rejected Defendants' first argument. Their next argument does not hold water. Defendants argued in their motion that Plaintiff was trying to obtain from the DOJ "information turned over by the co-

defendants which is designated as confidential by the plain text of the OMA's [Office of Monopolistic Affairs] own enabling statute." Docket # 32, p. 4. We fail to see how Defendants are unable to describe the nature of the documents allegedly protected by privilege, as required by FED.R.CIV.P. 45(d)(2)(A), when they were the ones who provided the documents to the DOJ. Furthermore, Defendants lack standing to claim any privilege regarding other documents available in the DOJ that were not provided by them. Therefore, Defendants have not met their burden under the rule.

Finally, Defendants seem to argue, without much explanation, that the subpoena is defective because it is not signed or dated. Contrary to Defendants' arguments, the subpoena was dated and signed by the Plaintiff's attorney, as is apparent from Exhibit A of Plaintiff's motion to compel (Docket # 55).[5]

*Plaintiff's motion to compel & DOJ's motion to quash:*

On the other hand, Plaintiff asks the Court to compel the DOJ to comply with the subpoena. The DOJ opposed Plaintiff's motion and moved the Court to quash

---

**4.** The balancing is confided to the discretion of the district judge. The requesting party's need for the materials is balanced against a number of factors: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information, (2) the impact upon persons who have given information of having their identities disclosed, (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure, (4) whether the information sought is factual data or evaluative summary, (5) whether the party seeking disclosure is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question, (6) whether the police investigation has been completed, (7) whether any interdepartmental disciplinary proceedings have arisen or may

arise from the investigation, (8) whether the plaintiff's suit is non-frivolous and brought in good faith (9) whether the information sought is available through other discovery or from other sources, and (10) the importance of the information sought to the plaintiff's case. *See, Carpet*, 181 F.R.D. at 688; *see also, Sealed*, 856 F.2d. at 272. The considerations are numerous and the privilege is far from absolute. We will not enter in this phase of the analysis because the requirements of the doctrine are not present in this case.

**5.** Besides Defendants' argument has been dismissed in the past. *See, Atlantic Investment Management, LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 397 (N.D.Ill.2002)(holding that an attorney's failure to sign a subpoena can be cured).

the subpoena, arguing, in sum, (1) that the information required by the subpoena is made privileged by Act 77, or in the alternative, by the "privilege of the required reports", (2) that Plaintiff's motion to compel is premature because there are motions to dismiss pending before the Court, and (3) that requiring the DOJ to disclose information pertaining to third parties that take no part in this litigation would harm the interests of these parties.

██ Our discussion in the previous section regarding the Act 77 privilege applies with equal force to the DOJ's contentions on that end. As for the remaining privileges raised by the DOJ (the required reports privilege and the official information privilege), we will not address the merits thereof, since any privilege was waived by both the untimeliness of the DOJ's motion as well as its partial disclosure of the information requested by Plaintiff through the subpoena.

As stated above, a motion to quash must be timely filed in order for the Court to consider it. *See*, FED.R.CIV.P. 45(c)(3)(A)(iii). The term timely is not defined in the rule, and therefore, is subject to interpretation. Some courts have concluded that it should be interpreted as requiring the movant to file the motion during the 14 days period following service of the subpoena. *See, In re Ecam Publications, Inc.*, 131 B.R. 556 (Bkrtcy.S.D.N.Y.1991)(holding that the term timely should be read in conjunction with 45(c)(2)(B), that requires a party subject to a subpoena to object to a subpoena *duces tecum* within 14 days of service of the subpoena). Other courts, however, have found it reasonable to grant a larger period of time not to exceed the time provided in the subpoena to comply with it. *See, Innomed Labs, LLC, v. Alza, Corp.*, 211 F.R.D. 237 (S.D.N.Y.2002).

The DOJ's motion to quash is untimely under either theory. The subpoena at issue here was served on May 19, 2006 and provided the DOJ until June 6, 2006 to comply with it. *See*, Docket # 55, Exh. A. The DOJ's motion to quash was filed on August 23, 2006 (Docket # 57), that is, more than 3 months after service of the subpoena and more than 2 months after the date for compliance with the subpoena. Therefore, the DOJ's motion is untimely, and does not comply with FED.R.CIV.P. 45(c)(3)(A)(iii).

██ Moreover, the DOJ's claim of privilege faces another difficult hurdle. Although the DOJ claims that all the information filed with the DOJ under the business review process is confidential pursuant to Act 77, and, alternatively, under the privilege of required reports, it already disclosed a substantial part of these documents. It argues, however, that the only documents disclosed were those submitted by the Defendants in this case. We already rejected the confidentiality of the documents pursuant to Act 77. Under the privilege of required reports, the holder of the privilege is the Government. *See, Association for Women in Science v. Califano*, 566 F.2d 339, (D.C.Cir.1977). As any other privilege, it can be waived if disclosure is made. *See, Securities and Exchange Commission v. Dresser Industries, Inc.*, 453 F.Supp. 573 (D.D.C.1978). The DOJ's purported privilege under the privilege of the required reports, and the policy behind it, is the same whether the documents were confided to the DOJ by the Defendants or by third parties. Therefore, any privilege the DOJ would have been entitled to was waived when it disclosed the documents.

On the other hand, the DOJ's argument that there are documents subject to the subpoena that were submitted by third parties who may have a claim of privilege

is not only belated but also too vague and speculative for the Court to rule on it. Moreover, the last of the DOJ's contentions, that the subpoena is premature because the Defendants have not answered the complaint, is premised on a wrong assertion. Co-defendants Nestle Puerto Rico, Inc. and Payco Foods, Corp. have answered the complaint. *See,* Docket # 18.

### Conclusion:

For the reasons set forth above, Defendants' Motion to Quash the subpoena (Docket # 32) and the DOJ's parallel motion are **DENIED.** Plaintiff's Motion to Compel is **GRANTED.** The DOJ is **ORDERED** to produce the requested documents by **January 31st, 2007.** The DOJ is also **ORDERED** to send a notification by **January 4, 2006,** to those parties that take no part in the instant case, but who filed documents in the DOJ pursuant to the business review process, so they can take whatever measures they deem appropriate to protect any right or privilege they may be entitled to.

**IT IS SO ORDERED.**