**MAINE SUGAR INDUSTRIES, INC. and Vahlsing, Inc.**

v.

**MAINE INDUSTRIAL BUILDING AUTHORITY and Special Interim Legislative Committee, Intervenor.**

Supreme Judicial Court of Maine.

March 31, 1970.

**2**

William R. Flora, Presque Isle, Roger M. Dougherty, and James M. O'Neill, Washington, D. C., for plaintiffs.

George A. Wathen, Augusta, for defendant.

Jon R. Doyle, Asst. Atty. Gen., Augusta, for intervenor.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE, and POMEROY, JJ.

WEBBER, Justice.

This was a complaint for declaratory judgment and injunctive relief reported upon agreed facts.

The two plaintiffs are corporations doing business in Maine. Both have substantial loans guaranteed by defendant Maine Industrial Building Authority, a body corporate and politic created by Act of the Legislature with power to sue and be sued. 10 M.R.S.A., Secs. 701 to 703 inc., Secs. 751 to 754 inc., Secs. 801 to 809 inc., and Secs. 851 and 852, all as amended.

Sec. 753 as amended by P.L.1968, Ch. 525, Sec. 8 provides:

"The Maine Industrial Building Authority is authorized to insure the payment of mortgage loans, secured by eligible projects, and to this end the faith and credit of the State is pledged, consistent with the terms and limitations of the constitution of the State of Maine, Article IX, section 14–A."

Sec. 801 provides a "non-lapsing, revolving fund," initially $500,000, to be used in part for the payment of "interest and principal payments required by loan defaults." The supporting provision of the Constitution of Maine, Article IX, Sec. 14–A provides:

"For the purposes of fostering, encouraging and assisting the physical location, settlement and resettlement of industrial, manufacturing, fishing and agricultural enterprises within the State, the Legislature by proper enactment may insure the payment of mortgage loans on the real estate and personal property within the State of such industrial, manufacturing, fishing and agricultural enterprises not exceeding in the aggregate $40,000,000 in amount at any one time and may also appropriate moneys and authorize the issuance of bonds on behalf of the State at such times and in such amounts as it may determine to make payments insured as aforesaid. * * *."

Sec. 702 of 10 M.R.S.A. as amended sets forth the purpose of the several statutes dealing with the Maine Industrial Building Authority in these terms:

"It is declared that there is a state-wide need to provide enlarged opportunities for gainful employment by the people of Maine and to thus insure the preservation and betterment of the economy of

the State and its inhabitants. It is further declared that there is a need to stimulate a larger flow of private investment funds from banks, investment houses, insurance companies and other financial institutions including pension and retirement funds, to help finance industrial expansion of industrial, manufacturing, fishing and agricultural enterprises. The Maine Industrial Building Authority is created to encourage the making of mortgage loans for the purpose of furthering expansion of such enterprises in the State."

The above excerpts make it abundantly clear that the Legislature is involved in and has a legitimate concern for the scheme of guaranteed loans which it has created. On January 22, 1970 the Senate adopted, the House concurring on January 23, 1970, a joint resolution which provided:

"WHEREAS, it is reported that many growers supplying Maine Sugar Industries and its affiliates have not been paid for their 1969 crop; and

WHEREAS, the Town of Easton has refused to waive any more property taxes of the Maine Sugar Industries plant there; and

WHEREAS, five other Aroostook communities have also refused to grant abatements on Maine Sugar Industries loading stations; and have not received payments for taxes due; and

WHEREAS, the Maine Industrial Building Authority, which has guaranteed $10,000,000 in loans to said industry has been requested to extend the term for payments; and

WHEREAS, a moratorium for the payment of principal and interest has already been granted by the Economic Development Administration to said industry for outstanding obligations; and

WHEREAS, there are recorded against Maine Sugar Industries and/or Vahlsing, Inc. certain liens and attachments in connection with unpaid claims; and

WHEREAS, said industry is in arrears on rent due the Aroostook Development Corporation; and

WHEREAS, these facts combine to create grave concern lest the structure of government loans, state credit and local concessions involved in the operation of Maine Sugar Industries may be in serious jeopardy and raise the question of whether further legislative action is necessary to protect the credit, peace, health and safety of the State; and

WHEREAS, the same is of immediate and vital interest to Maine taxpayers and the Maine Legislature because of the guarantee of the Maine Industrial Building Authority supported by the full faith; now therefore, be it

ORDERED, the House concurring, that a Special Interim Legislative Committee be created consisting of 3 members on the part of the Senate, appointed by the President of the Senate, and 6 members on the part of the House, appointed by the Speaker of the House. The Committee shall by a majority vote elect a chairman. The Committee is directed, in conjunction with the office of the Attorney General of the State of Maine, and with the full and complete cooperation of all state departments, to investigate fully and completely the facts surrounding the approval of said guarantees, the loans and the present financial problems, including but not limited to, the circumstances and facts of the applications, all assurances and representations connected therewith, the events and documents supporting said representations upon which the Maine Industrial Building Authority acted relating to the sugar beet and potato-processing industry in the State, and all corporate entities involved; in order that the Legislature may determine whether further legislative action is necessary to protect the credit, peace, health and safety of the

State. The Chairman, or any member of the Committee designated by him, shall have the power to administer oaths and to subpoena and require the attendance of witnesses and production of books, papers, records and other evidence pertinent to such investigation. In case of the refusal of any person to reply to any subpoena issued hereunder, or to testify to any matter to which he may be examined, the Superior Court in any county on application may issue an order requiring such person to comply with such subpoena and to testify. Any failure to obey such order may be punished by the Court as a contempt thereof. The Committee shall report its findings together with any proposed recommendations for legislative action to the Legislative Research Committee or the next regular session of the Maine Legislature, and therefor hereby appropriate from the Legislative Appropriation for said purpose a sum not exceeding $75,000."

The Special Committee has organized and is proceeding to carry out the duties assigned to it by the joint resolution. At the time this complaint was initiated it was anticipated that it would hold a hearing on February 26, 1970 at which it would make inquiry of the Authority with respect to pertinent information supplied to it by the plaintiffs. On the report of this case, by agreement of the parties and without the intervention of any restraining order or injunction, such inquiry has been deferred pending decision of the Law Court.

The plaintiffs look to provisions of 10 M.R.S.A., Sec. 852 as amended as establishing a complete bar to the proposed inquiry to be addressed to the Authority. It is therein stated:

"No member of the authority, agent or employee thereof shall divulge or disclose any information obtained from the records and files or by virtue of such person's office concerning the name of any lessee or tenant or information supplied by any lessee, tenant, mortgagee or local development corporation in support of an application·for mortgage insurance. Annual returns filed with the authority by a mortgagee, lessee, tenant or local development corporation shall be privileged and confidential."

At its special session convened in January, 1970 the Legislature enacted P.L.1969, Ch. 584, Sec. 1 which will become effective May 9, 1970 and which amends 10 M.R.S.A., Sec. 852 by adding the following paragraph thereto:

"Nothing in this section shall be construed to prohibit the disclosure of information from records or files of the authority or the production of records or files of the authority to a special interim legislative investigating committee, or its agent, upon written demand from the chairman of the committee or any member of the committee designated by him. Such information, records or files may be used only for the lawful purposes of the committee and in any actions arising out of investigations conducted by it."

We are asked to declare the rights and obligations of the parties which flow from Sec. 852 both before and after the amendment becomes effective.

All parties join in asserting that issues are presented which can and should be determined by declaratory judgment pursuant to the provisions of 14 M.R.S.A., Secs. 5951 to 5963 inc. With respect to the interpretation of 10 M.R.S.A., Sec. 852 as amended we have no difficulty in agreeing with contentions of counsel. In Jones v. Maine State Highway Commission (Me., 1968) 238 A.2d 226, 228 we had occasion to consider the scope of the declaratory judgment statute. We said, "The line between a set of facts which lead only to an advisory opinion or a moot question and those which lead to a justiciable issue is not clearly fixed, but it may be said that when a complainant makes a claim of right buttressed by a sufficiently substantial interest to warrant judicial protection and asserts it against a defendant having an adverse

interest in contesting it, a justiciable controversy exists. The presence of what the court concludes is *an important public issue,* may be the determining factor in recognizing a taxpayer's interest as sufficient to warrant acceptance of jurisdiction." (Emphasis supplied.) We have here "an important public issue" as well as the usual requirements for declaratory judgment. Plaintiffs properly seek to ascertain the protective limits of Sec. 852. The Authority needs and is entitled to know whether it can properly divulge information and the Special Committee is equally entitled to know what if anything it can properly request or demand in the way of information supplied by plaintiffs to the Authority.

 Opposing counsel also unanimously and emphatically assert that the Court may and should declare the effect of the amendment not to become effective until May 9, 1970. We have not heretofore had occasion to consider this problem. In Acme Finance Co. v. Huse (1937) 192 Wash. 96, 73 P.2d 341 in a careful and well reasoned opinion, the Court concluded that it was authorized to declare the rights of parties in the form of a declaratory judgment with respect to a statute which, although duly enacted, had not then become effective. The facts that defendants would enforce the law against plaintiff after its effective date and that alleged rights of plaintiff would be thereby affected were held adequate to fulfill the requirement that a justiciable controversy must exist. Reaching the same conclusion in Department of Financial Institutions v. General Finance Corp. (1949) 227 Ind. 373, 86 N.E.2d 444, 446, the Court noted the certainty that the new law would take effect, presumed that the Department would take steps to enforce its provisions and recognized that rights claimed by defendant would be affected. For the same reasons rights were declared with respect to a statute to become effective *in futuro* in Hoagland v. Bibb (1957) 12 Ill. App.2d 298, 139 N.E.2d 417. All of the factors deemed controlling in the cases above cited are here present and we are satisfied that the Maine declaratory judgment statute should be liberally construed to permit our consideration of the Sec. 852 amendment before its effective date.

We turn first to a consideration of Sec. 852 in its present form. A number of courts dealing with statutes not unlike our own have concluded that they should be strictly construed as prohibiting only voluntary disclosures. The problem ordinarily arises when the information protected by the statute constitutes important and marial evidence in a case being tried in court. In such instances it has been necessary to balance the public interest in protecting the confidentiality of the information as against the public interest in providing a fair and just trial. In Maryland Casualty Co. v. Clintwood Bank (1930) 155 Va. 181, 154 S.E. 492, the Court held that a statute preventing the giving of any information concerning a bank should be construed to prohibit only voluntary disclosure and not to "impede the administration of justice in the courts." In Marceau v. Orange Realty (1952) 97 N.H. 497, 92 A.2d 656, 657, the Court was dealing with the secrecy provision of the Unemployment Compensation Act. Citing *Maryland Casualty Co.* with approval, the New Hampshire Court held the fundamental reason for creating a testimonial privilege is to encourage disclosure to public officials of needed information and statutory privileges of this nature must be strictly construed. The Court was of the view that it should plainly appear in the statute itself that the Legislature deemed that the benefits of secrecy in a particular case outweighed the need for correct disposal of litgation. "The obligation (to disclose information required in the administration of justice) should not be limited without a clear legislative mandate." The Court therefore concluded that the statute under consideration prevented only voluntary disclosure. Reaching a like conclusion in State ex rel. State v. Church (1949) 35 Wash.2d 170, 211 P.2d 701, the Court emphasized the "duty to protect the rights of persons accused of crime * * * and * * * to afford them a fair trial."

Wigmore on Evidence, 3rd Ed., Vol. VIII, Sec. 2285 offers four tests which have proved useful and been applied in construing the secrecy provisions of statutes:

"1. The communications must originate in a *confidence* that they will not be disclosed.

2. This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

3. The *relation* must be one which in the opinion of the community ought to be sedulously *fostered*.

4. The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation."

It is the fourth principle which has been viewed as most relevant to the construction of secrecy statutes. A perusal of the cases suggests that this balancing of "injury" and "benefit" has been a most important factor in the minds of courts construing such statutes.

In State ex rel. Haugland v. Smythe (1946) 25 Wash.2d 161, 169 P.2d 706 the secrecy provision of a Social Security statute prevented the divulging of information to anyone. Some of the confidential information was required for use by a juvenile court. The Washington Court deemed applicable the tests set forth in Wigmore (supra) and concluded that, although the privilege would prevent disclosure to those who are motivated simply by curiosity or where the information was sought for purely commercial, personal, or political purposes, or as a basis for creditors' suits or similar proceedings, the statute should not be construed as preventing acquisition of the information by a court for its own use in determining a pending case.

A like result was reached in Jones v. Giannola (1952, Mo.App.) 252 S.W.2d 660;

Bell v. Bankers Life & Casualty Co. (1945) 327 Ill.App. 321, 64 N.E.2d 204; and In Re Culhane's Est. (1934) 269 Mich. 68, 256 N.W. 807.

■ In the instant case the statute contains no *express* provision barring use of the information in a judicial proceeding or in an investigation conducted by a Legislative Committee having the power "to subpoena and require the attendance of witnesses and production of books, papers, records and other evidence pertinent to such investigation." We recognize that there is some risk of injury to plaintiffs from disclosure but we are satisfied that that risk is outweighed by the public interest in having the Legislature fully informed as to matters which involve the use of public funds and the credit of the State, and which may suggest the need for further legislation. We conclude that Sec. 852 must be construed as prohibiting voluntary disclosure by the Authority but not as prohibiting mandatory disclosure either when required by a court of competent jurisdiction or when required by the intervenor Special Interim Legislative Committee. As to the amendment to become effective May 9, 1970, it suffices to say that it is so worded as to be interpretive and is entirely consistent with the construction we have given to Sec. 852 in its present form.

■ There is abundant authority in support of the proposition that the Legislature has and must have "the power to exact information in aid of the legislative function." McGrain v. Daugherty (1927) 273 U.S. 135, 47 S.Ct. 319, 329, 71 L.Ed. 580. In that case the Supreme Court said:

"A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change; and where the legislative body does not itself possess the requisite information—which not infrequently is true—recourse must be had to others who do possess it. Experience has taught that mere requests for such information often

are unavailing, and also that information which is volunteered is not always accurate or complete; so some means of compulsion are essential to obtain what is needed. All this was true before and when the Constitution was framed and adopted. In that period the power of inquiry, with enforcing process, was regarded and employed as a necessary and appropriate attribute of the power to legislate— indeed, was treated as inhering in it. Thus there is ample warrant for thinking, as we do, that the constitutional provisions which commit the legislative function to the two houses are intended to include this attribute to the end that the function may be effectively exercised."

See also the exposition of the proper scope of legislative investigation in an opinion by Chief Justice Warren in Watkins v. United States (1957) 354 U.S. 178, 187, 200, 77 S.Ct. 1173, 1179, 1185, 1 L.Ed.2d 1273.

In the instant case it is to be presumed that the Legislature is concerned only with matters within the proper scope of investigation. An appreciation of the importance of the operations of the Authority to the financial position of the State can be gleaned from Opinion of the Justices, January 12, 1970, reported in (Me.) 261 A.2d 250, 253, 254. Therein the several Justices gave it as their opinion that:

"Even though bonds authorized by the Legislature under Section(s) 14–A * * stand in a peculiar category in that they are to be issued only upon certain contingencies which may never occur, they are by virtue of the constitutional provisions (implemented in the case of 14–A by legislative action in 10 M.R.S.A. Sec. 802 * * *) 'authorized but unissued.' * * * The credit of the State of Maine is directly involved. * * * No bonds have been issued pursuant to Section(s) 14–A * * *. Whether or to what extent any such bonds will ever have to be issued cannot now be known. The requirement of issuance is contingent

upon the occurrence of several events, the economic failure of the borrower, the inadequacy of insurance funds in the hands of the Authority, and the inadequacy of funds in the State Contingent Account available to supplement the insurance funds."

The insuring of industrial loans is a relatively new undertaking for the people of Maine and is clearly a proper subject for legislative review and re-examination.

Plaintiffs call to our attention the fact that Form MIBA #2, a "Statement of Proposed Tenant" such as was submitted to the Authority by plaintiffs, contains the following language:

"It is understood that the Maine Industrial Building Authority will make available the information contained herein only to the proposed mortgagees and local development corporation, and further that the use of this information will be restricted to the determination of the eligibility of the undersigned as the Tenant of the proposed industrial project. It is further understood that the Authority will not disclose the information contained herein to any other person, firm, association or corporation or to any other governmental agency without the express written permission of the undersigned or their successors or assigns."

Plaintiffs view this as a contractual obligation which they assert may not be impaired by statute. We think this argument must fail for several reasons. Sec. 852 was in existence before this form was filed and accepted and a contract must be construed in the light of the law as it existed when the contract was made. The quoted language lends itself to the construction that only voluntary disclosures are barred as well as does the language of Sec. 852 which we have so construed. We do not view the reference to "any other governmental agency" as including the Legislature or a committee acting for it. In any event it would be beyond the power and authority

**8**

of the Authority to foreclose proper legislative action by any agreement it might seek to make. In the leading case of Home Bldg. & Loan Assoc. v. Blaisdell (1934) 290 U.S. 398, 54 S.Ct. 231, 239, 242, 78 L.Ed. 413, language was used which casts some light upon our problem. The Court said:

> "Not only are existing laws read into contracts in order to fix obligations as between the parties, *but the reservation of essential attributes of sovereign power* is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractual relations are worth while,—a government which retains adequate authority to secure the peace and good order of society. * * * The economic interests of the state may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts. * * * With a growing recognition of public needs and the relation of individual right to public security, the court has sought to prevent the perversion of the clause through its use as an instrument to throttle the capacity of the states to protect their fundamental interests." (Emphasis ours.)

This principle was reasserted and applied in City of El Paso v. Simmons (1965) 379 U.S. 497, 85 S.Ct. 577, 584, 13 L.Ed.2d 446. We conclude that plaintiffs have no contractual right which has been impaired by statute.

In conclusion, we hold that (1) Intervenor may require from defendant Authority disclosure of records and information obtained from plaintiffs pertinent to the authorized scope of its inquiry and only for its lawful purposes, and (2) plaintiffs are not entitled to the injunctive relief sought by their complaint.

So ordered.