Dennis HAMPTON and Sunyo Hampton, Plaintiffs,

v.

CITY OF SAN DIEGO; Kyle Kelley; Paul Libassi; Bob Burgreen; and Does 1 through 50, Defendants.

Civ. No. 92–995–B(POR).

United States District Court, S.D. California.

March 15, 1993.

Harvey R. Levine and Craig Clark, Levine, Steinberg, Miller and Clark, San Diego, CA, for plaintiffs.

Michael R. McGuinness, Deputy City Atty., Litigation Div., San Diego, CA, for defendants.

## MEMORANDUM DECISION AND ORDER

PORTER, United States Magistrate Judge.

### INTRODUCTION

This is a civil rights action brought under 42 U.S.C. § 1983. A wrongful death action under state law is also alleged. Plaintiffs allege that defendants, City of San Diego, Paul Libassi, Kyle Kelley and Robert Burgreen, violated plaintiffs' and decedent's civil rights when attempting to arrest decedent on January 17, 1992. The pretrial dispute addressed by this memorandum decision and order arises out of plaintiffs' request that defendants produce certain documents which defendants deem objectionable.

### FACTUAL BACKGROUND

This action was originally filed on June 5, 1992 by Dennis Hampton and Sunyo Hampton for the wrongful death of their son, John Hampton, and for section 1983 violations. The action arises out of the alleged excessive force used by defendants Kelley and Libassi on decedent Hampton during his attempted arrest on January 17, 1992. On that day, Officers Kelley and Libassi responded to a call reporting a 16 year old boy acting irrationally. After confrontation with the boy, and after striking the boy with police batons and a flashlight, the officers wrestled him to the ground while applying a neck restraint, also known as a carotid hold. Other officers also responded to the call and, at one point or another, joined in the struggle. As a result of the carotid hold, the boy died.

### PROCEDURAL BACKGROUND

Plaintiffs' original request for production of documents, which sets forth thirty-one categories of requested documents, has been complied with in part by the defendants. The defendants refused to produce the following requests:

**Request Numbers 4, 5 and 6:** Any and all documents relating, referring to or describing the training, conduct, performance or evaluation of Kyle Kelley, Paul Libassi and any other officers who were involved in the incident from the time of their initial application for employment with the City to and including the present.

**Request Numbers 7, 8 and 9:** Any and all records, reports, complaints or other documents received, filed, pending, completed or in other status, concerning Kyle Kelley, Paul Libassi and all other officers involved in the incident, made subsequent to the date of their application for employment to the City, alleging, relating or referring to their use of excessive force, aggressive conduct, false arrest, improper arrest procedures, improper use of force, use of any improper procedures or any other complaints by any person or entity about or against Kyle Kelley, Paul Libassi or any other officers who were involved in the incident.

Defendants objected to these requests on the grounds that they were overbroad, irrelevant, burdensome and that they violated federal and state privacy rights. Defendants also claimed the work product privilege, the attorney client privilege, the self-critical analysis privilege, the official information privilege and the executive privilege. Finally, defendants objected to the requests pursuant to California Penal Code sections 832.5, *et seq.* and Evidence Code sections 1040, *et seq.*

On January 13, 1993 an Early Neutral Evaluation Conference was held before this court. During that conference, the parties indicated that a discovery dispute was forming over the City's response to plaintiffs' request for personnel records and internal affairs files. This court indicated to counsel that it agreed with the procedure (as related to the official information privilege) set out in the case of *Miller v. Pancucci,* 141 F.R.D. 292 (C.D.Cal.1992) and that the parties should comply with these procedures before requesting a discovery conference from the court.

Thereafter, counsel for the parties met and conferred, could not reach a resolution and scheduled a discovery conference with the court. On February 10, 1993 a discovery conference was held and this court ruled, in part, that since the City failed to comply with the procedures set out in the *Miller* case, they were deemed to have waived any right to an *in camera* review of the disputed docu-

ments. The court proceeded to do a balancing analysis weighing the benefits of disclosure against potential disadvantages and determined that the need for the discovery prevailed. The court ordered all documents produced within 30 days of the hearing. This Motion for Reconsideration was brought in response to the court's ruling.

## DISCUSSION

As defendants' present motion raises only objections to relevance, privacy and the procedure discussed in the *Miller* opinion, as related to claims of the official information privilege, this court will only address such.

### I. *Relevance*

Defendants argue that after an examination of plaintiffs' allegations, it is clear that plaintiffs' requests are overbroad in that much of what is sought is not relevant to the subject matter of the action.

■ In the absence of a privilege, the test for determining whether material is discoverable is relevancy. Fed.R.Civ.P. 26(b)(1). This rule is construed broadly and includes "any matter that bears on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). Discovery is not limited to the issues raised only in the pleadings but rather it is designed to define and clarify the issues. *Id.* at 351, 98 S.Ct. at 2389.

■ Request Numbers 4, 5, 7 and 8 ask for the personnel files and internal affairs histories of the two named officer defendants. This court believes that such files are relevant to the allegations in this lawsuit. Information contained in these files may be relevant on the issues of credibility, notice to the employer, ratification by the employer and motive of the officers. Further, information concerning other instances of misconduct may also be relevant on the issue of punitive damages, in that the information may lead to evidence of a continuing course of conduct reflecting malicious intent.

■ Request Numbers 6 and 9 ask for the personnel files and internal affairs histories of the non-party officers at the scene. Such

documents may be relevant to plaintiffs' claims against the City as relates to its policies of hiring, training, supervision and control. In addition, such information may be relevant to the non-party officers' credibility and their willingness to intercede during instances of alleged improper conduct of fellow officers.

■ Much of what defendants may argue irrelevant in the disputed files requested above could have been worked out amongst counsel had defendants produced an adequate privilege log. This court does not agree with defense counsel that producing such a log would, in and of itself, violate the privacy rights defendants seek to protect. Such a log could have been produced pursuant to a stipulated protective order. This would have protected the officers' privacy rights while providing an opportunity for counsel to meet and confer regarding the objections in the log. This could have considerably narrowed the scope of remaining objectionable material for the court to review, should it choose to do so.

Defense counsel has indicated to the court that in addition to believing that such a privilege log is a violation of privacy, it is the custom and practice of the City Attorney's Office to review police files only after the court has issued an order. This is a policy that the City Attorney's Office and the San Diego Police Department should re-evaluate in light of this court's decision.

This case is a prime example of why it should be incumbent on the attorneys to make a good faith effort to resolve as much of this type of dispute as possible before resorting to the court. In this case, defendants are asking the court to comb through seven personnel files and seven internal affairs histories which defense counsel has characterized as "extensive and voluminous documents and materials." There is no doubt that there will be material in at least the personnel files that plaintiffs may not need nor want. It is a great burden for the court, and consumes a great deal of the court's time, to go through each of these files only to be looking at medical histories, emergency contact forms, payroll plans etc. This is the type of review the attorneys should be

conducting long before approaching the court. It is certainly not fair to the taxpayers of this country to have to pay the costs and expenditures of the federal courts for work that attorneys should be doing.

## II. *Privacy Rights*

■ In civil rights cases brought under federal statutes, questions of privilege are resolved by federal law. *Kerr v. U.S. District Court for the Northern District of California*, 511 F.2d 192, 197 (9th Cir.1975), *aff'd on procedural grounds*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). "State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases." *Kelly v. City of San Jose*, 114 F.R.D. 653, 655 (N.D.Cal.1987).

Defendants concede that federal law controls on the issue and existence of privileges and, therefore, no further discussion as to which law controls is necessary. However, defendants ask this court to look to state law as a reference to the extent that state privileges do not contradict or impinge upon the federal rights asserted.

This court does not feel that it is necessary to undertake such a task. "In reviewing the California statutory procedures, one discovers the same blend of federal analysis that appears in the federal cases concerning the privilege of official (confidential) information ... and privacy." *Martinez v. City of Stockton*, 132 F.R.D. 677, 681 (E.D.Cal.1990).

At the February 10, 1993 discovery conference, this court, with the information it had before it, balanced the need for the requested information against the privacy rights argued by defendants. At that conference, however, the court did not have information on the extent of the involvement of the nonparty officers at the scene. It is the privacy rights of these officers that concern the court. For this reason, the court is going to review the disputed files *in camera*.

## III. *Miller and the Official Information Privilege*

■ Through this opinion, this court is hereby joining the Northern District's and Central District's procedures outlined in *Kel-*

*ly v. City of San Jose*, 114 F.R.D. 653 (N.D.Cal.1987) and *Miller v. Pancucci*, 141 F.R.D. 292 (C.D.Cal.1992) for invoking the official information privilege. The requirements, with this court's modifications, outlined in the above cited cases must be satisfied before this court will look at police documents *in camera* and before it will entertain a discovery conference to compel said documents.

The procedure is outlined as follows: "A party that receives a discovery request which seeks material that it believes is covered by the official information privilege must ... serve and file an objection that invokes the official information privilege by name." *Kelly*, 114 F.R.D. at 669. "The party must set forth this objection separately in response to each discovery question or request that would reach material covered by the privilege." *Id.* The asserting party must sufficiently identify the documents in a privilege log so as to afford the requesting party an opportunity to challenge the assertion. *Miller*, 141 F.R.D. at 300. The privilege log may be the subject of a stipulated protective order.

"[T]he party must also submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." *Kelly*, 114 F.R.D. at 669.

The affidavit or declaration from the agency official must include: (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of

how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made. *Id.* at 670.

After receiving the objection, the parties are to meet and confer to discuss the privilege log. After a good faith exchange, the parties shall attempt to reach an agreement as to whether the objection should stand and, if so, whether the privilege outweighs the requesting party's need for the information. At this point the requesting party may also be able to narrow the requests, as the contents of the police files will now be known.

If the parties agree that there is privileged material in the files that should not be produced, then pursuit of said documents should cease. If the parties agree that there is privileged material that should be produced, then the parties should draft a stipulated protective order. Only if the parties cannot agree on the production of documents detailed in the privilege log and only after meeting, conferring and in good faith attempting to resolve the dispute, should the parties call the court for a discovery conference.

In preparation for a discovery conference, the parties shall prepare a joint discovery conference statement that should contain the following:

The requesting party shall (1) describe how, in the particular situation at bar, the requested information is relevant to the litigation or is reasonably calculated to lead to the discovery of admissible evidence, (2) identify interests of plaintiff's that would be harmed if the material were not disclosed, (3) specify how that harm would occur and how extensive it would be, and (4) why it would be impossible or impracticable to acquire information of equivalent value through alternative means. *Kelly,* 114 F.R.D. at 671. Defendant shall then respond in the same document by (1) identifying the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer and (2) how disclosure under a tightly drafted protective order would create a substantial risk of harm to significant governmental or privacy interests. *Id.* at 670. Along with the joint discovery conference statement, counsel shall also submit the privilege log and the affidavit of the agency official filed at the time of the initial objection.

After the court reviews the joint discovery conference statement, the privilege log and the affidavit, the court will determine whether defendant's submissions are sufficient to meet its threshold burden. *Id.* at 671. If not, the court will order disclosure of the material. *Id.* If the court concludes that defendant's submissions meet the threshold requirements for proper invocation of this privilege, the court will order the documents be brought to the discovery conference for an *in camera* review. *Id.* The above procedural requirements are necessary in order to assist the court in reaching an efficient and informed decision.

## CONCLUSION

Even though this court affirmatively advised counsel at the Early Neutral Evaluation Conference of the *Miller* case and its requirements, this court had not yet formally adopted the procedures outlined in either *Miller* or *Kelly.* Therefore, it will not hold counsel accountable for not following the procedures outlined in those cases.

It is only because of the lack of a previously filed order, along with the additional information submitted to the court on the nonparty officers' involvement, that this court will look at all the documents submitted *in camera.* An order following that *in camera* review will issue.

IT IS SO ORDERED.