Smith v. Alice Peck Day Memorial Hosp CV-92-645-B   04/21/93 P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Gail Smith, M.D.</u>

    v._____Civil No. 92-645-B

<u>Alice Peck Day Memorial</u>
<u>Hospital, Mark Nunlist, M.D.,</u>
<u>and Barbara Talsky, C.R.N.A.</u>


**O P I N I O N**


On February 18, 1993, I granted Dr. Gail Smith's motion for an expedited Order compelling the Alice Peck Day Memorial Hospital to produce certain documents that the hospital claims are protected from disclosure by a "quality assurance" privilege. In this Opinion, I explain the reasons for my Order.


I.  <u>BACKGROUND</u>

Dr. Smith commenced this action for injunctive relief and damages after the hospital revoked her staff privileges. Her

complaint alleges seven state[1] and three federal[2] claims. Jurisdiction is based on both diversity of citizenship and the presence of federal claims.

On February 1, 1993, Dr. Smith moved to compel the hospital to produce certain documents generated during the course of an internal investigation and several hospital committee meetings that resulted in the revocation of her staff privileges. The hospital opposes the motion on the ground that the requested documents are protected by the quality assurance privilege codified at section 151:13-a, II of the New Hampshire Revised Statutes Annotated.[3] Dr. Smith concedes that the documents she

---

[1]Failure to Carry Out Review in Accordance With By-Laws (Count I); Breach of Contract (Count II); Arbitrary, Capricious, and Unreasonable Decision (Count III); Wrongful Termination (Count IV); Unfair or Deceptive Trade Practices (Count V); Tortious Interference With Contractual Relations and Prospective Economic Advantage (Count IX); Libel and Slander (Count X).

[2]Violation of Civil Rights Under 42 U.S.C. § 1981 (Count VI); Discriminatory Employment Practices Under 42 U.S.C. § 2000e-2 (Count VII); Conspiracy to Violate Civil Rights Under 42 U.S.C. 1985(3) (Count VIII).

[3]Section 151:13-a, II provides:

> Records of a hospital committee organized to evaluate matters relating to the care and treatment of patients or to reduce morbidity and mortality and testimony by hospital trustees, medical staff, employees, or other committee attendees relating to activities of the quality assurance committee shall be

2

seeks were created in connection with the activities of a quality assurance committee. Nevertheless, she relies on an exception to section 151:13-a, II and argues that the quality assurance privilege is inapplicable in actions challenging a hospital's decision to revoke a physician's staff privileges.

## II.  DISCUSSION

Before I turn to the merits of the hospital's privilege claim, I must determine whether the claim is governed by state or federal law.

### A.  Choice of Law

The parties assume that this discovery dispute is governed by state law.  I disagree.

---

confidential and privileged and shall be protected from direct or indirect means of discovery, subpoena, or admission into evidence in any judicial or administrative proceeding, except that in the case of a legal action brought by a quality assurance committee to revoke or restrict a physician's license or hospital staff privileges, or in a proceeding alleging repetitive malicious action and personal injury brought against a physician, a committee's records shall be discoverable.

N.H. Rev. Stat. Ann. § 151:13-a, II (1990).

Discovery in civil cases pending in federal district court is controlled by the Federal Rules of Civil Procedure. Rule 26 provides broadly that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). The question of what matters are privileged in federal court must be decided in light of Rule 501 of the Federal Rules of Evidence, which states:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with State law.

Fed. R. Evid. 501.

Read literally, Rule 501 appears to require the application of the federal common law of privileges with respect to the federal claims and the state law of privileges with respect to the state claims. Such an approach, however, has been rejected

4

by other courts for the following reason:

> If a communication were privileged under state law but not under federal law, or if a communication were privileged under federal law but not under state law, it would be meaningless to hold the communication privileged for one set of claims but not for the other. Once confidentiality is broken, the basic purpose of the privilege is defeated.

Perrignon v. Bergen Brunswig Corp., 77 F.R.D. 455, 458 (1978); accord Wm. T. Thompson Co. v. General Nutrition Corp., 671 F.2d 100, 104 (3d Cir. 1982); Hansen v. Allen Memorial Hosp., 141 F.R.D. 115, 121 (S.D. Iowa 1992). Thus, in federal question cases where pendent state law claims are raised, the asserted privileges are governed by federal common law. See, e.g., Wm. T. Thompson Co., 671 F.2d at 104; Hansen, 141 F.R.D. at 121; Perrignon, 77 F.R.D. at 458-59. Similarly, in cases such as this one, where jurisdiction is based on both diversity of citizenship and the presence of federal claims, federal common law controls any claim of privilege. See von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987).

B. Application

In the case of In re Hampers, the Court of Appeals for the First Circuit established a two-part test for determining whether a federal court should recognize a state evidentiary privilege as

5

a matter of federal common law.[4]  651 F.2d 19, 22-23 (1st Cir.

1981).  The test may be paraphrased as follows:

  1.  Would the New Hampshire courts recognize the
      privilege?

  2.  Is the asserted privilege "intrinsically meritorious"
      in the federal court's own judgment?

See id.; see also Sabree v. United Broth. of Carpenters & Joiners

Local 33, 126 F.R.D. 422, 425 (D. Mass. 1989); Massachusetts v.

First Nat. Supermarkets, Inc., 116 F.R.D. 357, 360 (D. Mass.

1987).  This test is in accord with the accepted principle that

"comity between state and federal sovereignties impels federal

courts to recognize state privileges where this can be

accomplished at no substantial cost to federal substantive and

procedural policy."  United States v. King, 73 F.R.D. 103, 105

(E.D.N.Y. 1976).

    Thus, in determining whether the hospital's privilege claim

has merit, I will first determine whether the state courts would

apply the privilege in a similar case.  I will then make my own

assessment as to whether it would be "intrinsically meritorious"

_____

    [4]The hospital does not contend that the quality assurance
privilege it asserts is derived from the Health Care Quality
Improvement Act of 1986, 42 U.S.C. § 11101, et seq.  Thus, cases
which evaluate a quality assurance privilege claim under this
statute are inapplicable.  See, e.g., LeMasters v. Christ Hosp.,
791 F. Supp. 188, 191-92 (S.D. Ohio 1991); Teasdale v. Marin Gen.
Hosp., 138 F.R.D. 691, 694 (N.D. Cal. 1991).

6

to apply the privilege here.

      1.  <u>Would the New Hampshire courts recognize the privilege</u>?

The applicability of the quality assurance privilege in this case depends upon the meaning of an exception to the privilege which exists "in the case of a <u>legal action</u> brought by a quality assurance committee to revoke or restrict a physician's license or hospital staff privileges . . . ." N.H. Rev. Stat. Ann. § 151:13-a, II (1990) (emphasis added). The hospital suggests that the term "legal action" means a judicial proceeding. Accordingly, the hospital contends that the exception applies only where a hospital quality assurance committee brings an action in court to revoke a physician's privileges. Dr. Smith argues that "legal action" includes any formal proceeding to revoke or restrict privileges and any judicial proceeding which challenges a decision to revoke or restrict privileges. Accordingly, she contends that the exception applies to all physician revocation proceedings without regard to whether the physician's privileges were revoked in a judicial proceeding. Because the New Hampshire Supreme Court has not yet addressed this issue, I must look to the Court's interpretative methodology to determine which of the two proposed interpretations would be followed by the state courts.

The New Hampshire Supreme Court's primary rule of construction is that statutory terms will be given their ordinary meaning and will be construed in the context of the statute as a whole. Great Lakes Aircraft Co. v. Claremont, 135 N.H. 270, 277-78 (1992); Opinion of the Justices, 135 N.H. 543, 545 (1992).

When construing a statute, the Court will reject proposed interpretations that would deprive a significant portion of the statute of meaning or cause absurd results. New England Brickmaster, Inc., v. Salem, 133 N.H. 655, 663 (1990); State v. Hart, 130 N.H. 325, 327 (1988). Extrinsic evidence, such as legislative history, will only be used to resolve ambiguities which exist on the face of the statute. See Chroniak v. Golden Inv. Corp., 133 N.H. 346, 350-51 (1990). Finally, the Court has recognized that the quality assurance statute, like all evidentiary privileges, must be narrowly construed. See In re K, 132 N.H. 4, 15 (1989); see also University of Pa. v. EEOC, 493 U.S. 182, 189 (1990) (recognizing the general rule that evidentiary privileges must be strictly construed).

Applying these rules here, I hold that the state courts would not adopt the hospital's proposed interpretation of the exception to the quality assurance privilege. First, the hospital proposes a narrow construction of the exception rather

than of the privilege itself.  As a result, if the hospital's interpretation of section 151:13-a, II were adopted, the quality assurance privilege would rarely, if ever, permit a physician to determine whether a privilege revocation decision was properly made.[5]  Such a broad application of the privilege is inconsistent with the New Hampshire Supreme Court's statement in In re K that the quality assurance privilege must be narrowly construed.

Second, the hospital's proposed interpretation of the physician privilege revocation exception would deprive the exception of meaning in all but the most unlikely of cases.  A hospital does not need to file suit to terminate a physician's privileges.  See generally Bricker v. Sceva Speare Hosp., 111 N.H. 276, cert. denied, 404 U.S. 995 (1971) (upholding a hospital's unilateral decision to terminate a physician's staff privileges).  Moreover, it is difficult to conceive of the circumstances under which a hospital could commence a judicial proceeding to terminate a physician's privileges.[6]  Thus, if I

---

[5]Counsel for the defendants conceded during oral argument that their construction of the privilege would allow a hospital to shield from discovery even explicit and direct evidence that a physician's privileges had been terminated for an obviously improper reason such as racial discrimination.

[6]Defendants identified only two instances in which a hospital might commence a lawsuit in connection with a physician privilege revocation decision.  The first was a declaratory

9

adopted the hospital's argument, I would violate New Hampshire's accepted rule of construction that statutory terms should not be given an interpretation that deprives significant portions of the statute of meaning.  See, e.g., New England Brickmaster, Inc., 133 N.H. at 663; Hart, 130 N.H. at 327.

Finally, nothing in the legislative history of section 151:13-a, II suggests that the New Hampshire legislature intended to allow hospitals to invoke the quality assurance privilege in physician revocation cases.  To the contrary, the legislative history indicates that the principal purpose of section 151:13-a, II is to protect quality assurance materials from being disclosed to malpractice plaintiffs.  See Senate Journal, June 4, 1981 at 1413; Written Testimony of Claire Brown, Assistant Administrator, Concord Hospital, Before the House Committee on Health & Welfare (Apr. 20, 1981); Testimony of Henry Coe, New Hampshire Hospital Association, Before the Senate Committee on Public Health & Welfare (May 11, 1981); see also In re K, 132 N.H. at 17 (section 151:13-a "simply leaves certain potential malpractice plaintiffs

_____

judgment action to obtain a ruling on the hospital's right to revoke a physician's privileges.  The second was an action for injunctive relief to bar a discharged physician from the hospital grounds.  Either action would be highly unlikely, if not unprecedented.  Moreover, neither action is truly a proceeding to revoke or restrict a physician's hospital privileges.

in the position of any litigant, or intending litigant, who cannot depend on the luxury of relying on the opposing party to furnish pretrial investigation and preliminary expert evaluation").  This legislative purpose can be fully achieved without extending the quality assurance privilege to physician revocation cases.

In contrast to the hospital's proposed interpretation, Dr. Smith's interpretation is consistent with the rules of construction favored by the New Hampshire Supreme Court.  First, her interpretation narrowly construes the privilege in accordance with the Court's directive in In re K.  Second, it leaves the exception with a meaning and effect without adversely affecting the applicability of the privilege in malpractice cases.  Thus, I conclude that the New Hampshire state courts would adopt Dr. Smith's proposed interpretation and hold that the quality assurance privilege is inapplicable in litigation challenging a hospital's decision to revoke a physician's staff privileges.

2. Is the asserted privilege "intrinsically meritorious" in the federal court's own judgment?

Since I have determined that the state courts would not apply section 151:13-a, II in a case such as this, I need not determine whether the application of that section to physician

11

privilege revocation cases is intrinsically meritorious. I do so now, however, to inform the parties that I would not apply the privilege here even if the state courts would do so under similar circumstances.

In determining whether the privilege is "intrinsically meritorious" to warrant recognition under federal law, a court ordinarily must find the following: (i) the communication must originate in a confidence that it will not be disclosed; (ii) this confidentiality must be "essential 'to the full and satisfactory maintenance of the relation between the parties;'" (iii) the relation must be one "which 'ought to be sedulously fostered;'" and (iv) the harm that "'would inure to the relation by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of the litigation.'" See Hampers, 651 F.2d at 22-23 (quoting ACLU of Miss. v. Finch, 638 F.2d 1336, 1344 (5th Cir. 1981)). If one of these conditions is not present, the state law privilege should not be recognized. See Finch, 638 F.2d at 1344. Applying this analysis to the instant case, I conclude that with respect to the fourth element, the balance must tip in favor of Dr. Smith and thus in favor of disclosure.

12

The primary purpose of section 151:13-a, II as noted above, is to allow hospitals to carry out their reviews of medical procedures and clinical performance with knowledge that certain documents generated during those reviews cannot be used by malpractice plaintiffs. However, this privilege does not allow a hospital to deprive a malpractice plaintiff of direct evidence of the alleged malpractice. Instead, it merely allows a hospital to protect the product of its own investigation into the alleged malpractice when that investigation is conducted in connection with actions of a quality assurance committee. Under such circumstances, the privilege will generally have little impact on a plaintiff's ability to establish a valid cause of action. See Memorial Hosp. for McHenry County v. Shadur, 664 F.2d 1058, 1062 (7th Cir. 1981); Schafer v. Parkview Memorial Hosp., Inc., 593 F. Supp. 61, 64 (N.D. Ind. 1984).

If, however, the quality assurance privilege is applied in physician revocation cases, the potential impact on the physician plaintiffs is far more dramatic. In such cases, a physician's cause of action arises directly from the proceedings which the hospital claims should be sheltered by the quality assurance privilege. Thus, if a hospital were to invoke the privilege in a physician revocation case, the hospital could deprive the

13

physician plaintiff of the only evidence that might support a cause of action for improper termination.  See Shadur, 664 F.2d at 1062; Pudlo v. Adamski, No. 91 C 7474, 1992 WL 27002, at *5 (N.D. Ill. Feb. 12, 1992).  In a case such as this, where Dr. Smith alleges violations of federal employment and civil rights laws and seeks documents that may contain the only means by which she could ever prove such violations, the overriding public interest in the enforcement of those laws outweighs any claim that the hospital would be injured by the disclosure of the allegedly privileged documents.  See Shadur, 664 F.2d at 1063 (interest in private enforcement of antitrust law outweighs the hospital's interest in protecting documents from disclosure); cf. Hampers, 651 F.2d at 23 (if the document requested "contained the only key to resolving a serious federal crime, the balance would tilt" in favor of disclosure).  Accordingly, I conclude that it would not be intrinsically meritorious to apply the quality assurance privilege in this proceeding even if the state courts would apply the privilege in such cases.

## III.  CONCLUSION

Plaintiff's Motion for an Expedited Order Compelling

Production of Documents (document no. 16) is granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

April 21, 1993

cc:  Bruce Felmly, Esq.
     Mark Larsen, Esq.
     Thomas Shirley, Esq.
     Jill Blackmer, Esq.