Joseph GREEN, Plaintiff

v.

Peter FULTON, et al., Defendants.

Civ. No. 94–82–P–H.

United States District Court,
D. Maine.

June 27, 1994.

Thomas J. Connolly, Portland, ME, for plaintiff.

Jeffrey T. Edwards, Edward R. Benjamin, Jr., Preti, Flaherty, Beliveau & Pachios, Portland, ME, for defendants.

## MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY

DAVID M. COHEN, United States Magistrate Judge.

This § 1983 action arises out of the alleged use of excessive force by members of the Windham Police Department in the pursuit, capture and arrest of the plaintiff, Joseph Green, on March 12, 1992. The plaintiff has sued the arresting officers, Peter Fulton and Greg Doyon, both in their individual and official capacities, and Richard Lewsen, Windham's chief of police, in his individual and official capacities. The plaintiff claims that the defendants violated his Fourth Amendment rights by forcing an unnecessary high speed chase and setting up a dangerous road block. The plaintiff's car collided with the road block, resulting in physical injury to the plaintiff.

Before the court now is the plaintiff's motion to compel production of various documents requested from the defendants during discovery. The plaintiff seeks the complete Windham Police Department personnel file for each defendant (Request No. 4), reports relating to the internal investigation and discipline of the arresting officers stemming from this incident (Request No. 6) and, for the period 1975 to the present, records pertaining to other injuries caused by high speed pursuits or road blocks involving the Windham Police Department (Request No. 19). The defendants have objected to the production of these documents on the basis of relevancy and/or a state law privilege created by 30–A M.R.S.A. § 2702.[1] That stat-

---

1. I note that the defendants have not complied with the requirement of Fed.R.Civ.P. 26(b)(5)

ute provides certain protection from disclosure under the Maine Freedom of Access Act for the personnel and disciplinary records of municipal employees. I will first address the defendants' claims of privilege and then their relevancy objections.

## I. Choice of Privilege Law

 Assertions of privilege in federal question cases in federal court are governed by federal law. *See* Fed.R.Evid. 501. Though a state statute might create an evidentiary privilege that is cognizable in state court, that statute does not bind a federal court sitting in that state deciding a federal question. *See In re Hampers,* 651 F.2d 19, 21–24 (1st Cir.1981). The first sentence of Rule 501 of the Federal Rules of Evidence instructs federal courts in federal question cases to determine the existence of a privilege "by the principles of the common law as they may be interpreted by courts of the United States in the light of reason and experience." Fed.R.Evid. 501. Of course, this does not mean that state evidentiary privileges, whether statutory or decisional, carry no weight; as a principle of comity, federal courts should recognize state evidentiary privileges as a matter of federal common law where this can be accomplished at no substantial cost to federal procedural and substantive policy. *In re Production of Records to Grand Jury,* 618 F.Supp. 440, 442 (D.Mass.1985).

██ As an initial matter, the defendants challenge the application of federal privilege law over state privilege law in this case. They argue that this action is primarily a state law case, not a federal question case, and thus should be governed by state privilege law, citing to the second sentence of Rule 501. The second sentence of Rule 501 directs federal courts to look to state privilege law to determine the existence of the asserted privilege in civil actions where state substantive law supplies the rule of decision for a claim or defense. Fed.R.Evid. 501. This portion of Rule 501 does not apply to this case, however. Where a federal civil action involves combined state and federal law claims, as here, and the asserted privi-

lege is relevant to both claims, federal courts have consistently ruled that privileges are governed by federal law, not state law. *See, e.g., Hancock v. Hobbs,* 967 F.2d 462, 466–67 (11th Cir.1992); *von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 141 (2d Cir.), *cert. denied* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Smith v. Alice Peck Day Memorial Hosp.,* 148 F.R.D. 51, 53 (D.N.H. 1993). State privilege law should govern in combined state-federal cases only when the state law issues predominate over the federal issues, a situation that poses a real danger of forum shopping. *See, e.g., American Civil Liberties Union of Miss., Inc. v. Finch,* 638 F.2d 1336, 1343 (5th Cir.1981).

██ In arguing that this case is essentially a state law claim in nature, the defendants point to the fact that two of the three counts in the complaint are state law claims and that the plaintiff originally brought this action in state court. Regardless of where this suit was originally brought, the gravamen of the plaintiff's complaint concerns a violation of his federal constitutional right to be free from the use of excessive force. As such, this case involves primarily a federal civil rights question, accompanied by ancillary state tort law claims. The fact that this action was originally brought in state court is insignificant since a state court is just as competent to hear a federal civil rights claim as a federal court. Moreover, having chosen to remove this case to a federal forum, as was their right, the defendants cannot now complain about the federal court's application of its own evidentiary law. I therefore conclude that the existence of any privilege in this case is governed by federal common law, as directed by the first sentence of Rule 501 and appropriate caselaw.

## II. Recognition of State Privilege

As stated earlier, the application of federal privilege law under the first part of Rule 501 does not necessarily mean that Maine privilege law will not be honored in this action. The First Circuit has adopted a balancing test, weighing the respective federal and state interests, for determining when the federal common law should recognize state evi-

that they describe the nature of the documents withheld on the grounds of privilege.

dentiary privileges as a matter of comity in federal question cases. *See Hampers,* 651 F.2d at 22. Under the *Hampers* analysis, I must determine, first, whether the courts of Maine would recognize an evidentiary privilege founded on 30–A M.R.S.A. § 2702, and second, whether that privilege is "intrinsically meritorious." *See id.*

▮ I need go no further than the first prong of the *Hampers* inquiry. I find that the courts of Maine would not read 30–A M.R.S.A. § 2702 as creating a blanket privilege protecting police personnel and disciplinary files from disclosure in civil rights actions. The statutory provision at issue is an exception to Maine's Freedom of Access Act, exempting municipal personnel records from the definition of "public records" open to public inspection. *See* 1 M.R.S.A. § 402(3)(A). Although the statutory exception confers "confidential" status on these records—the cornerstone of any claim of privilege—it does not by its language create an evidentiary privilege shielding the records from disclosure in judicial proceedings; it merely closes access to the public at large. *See* 30 M.R.S.A. § 1. The Maine Law Court has twice refused to read other statutes mandating confidentiality for certain official records as creating evidentiary privileges protecting those records from forced disclosure in judicial proceedings. *Pooler v. Maine Coal Prod.,* 532 A.2d 1026, 1028 (Me.1987); *Maine Sugar Indus., Inc. v. Maine Indus. Bldg. Auth.,* 264 A.2d 1, 5–6 (Me.1970). Balancing the public interest in protecting confidential information against the competing public interest in providing fair and just trials, the Law Court has held that a nondisclosure statute does not create an evidentiary privilege unless the statute explicitly says so. *Maine Sugar Indus., Inc.,* 264 A.2d at 5–6. In the absence of such an express provision, a statute mandating confidentiality is construed to prevent only voluntary disclosure to the public; it does not prohibit mandatory disclosure when required by a court. *Pooler,*

532 A.2d at 1028; *Maine Sugar Indus., Inc.,* 264 A.2d at 5–6.

In light of the Law Court's explicit reading of Maine nondisclosure statutes, absent an express provision barring use of police personnel records in judicial proceedings, I find that 30–A M.R.S.A. § 2702 creates no state evidentiary privilege shielding the documents requested by the plaintiff.[2] *See also* Me. R.Evid. 508(b) & advisers' note. Accordingly, the defendants' claims of state privilege, premised on 30–A M.R.S.A. § 2702, must fail. The confidentiality that this nondisclosure statute has created for the defendants' personnel records—protection from public inspection—can be maintained through the issuance of a protective order.

### III. Federal Common Law Privileges

Because the defendants have asserted no privilege other than the one they believed 30–A M.R.S.A. § 2702 afforded, I need not address any federal common law privileges that might cover the requested documents. For the purpose of completeness, however, I note that the so-called "official information" privilege, as formulated by the federal courts, would pertain to the type of police documents requested by the plaintiff in this § 1983 action. The scope of the official information privilege, specifically as it pertains to the discoverability of police files in federal civil rights cases, is set forth in the oft cited cases of *King v. Conde,* 121 F.R.D. 180, 187–95 (E.D.N.Y.1988) (Weinstein, J.), *Kelly v. City of San Jose,* 114 F.R.D. 653, 660–72 (N.D.Cal.1987), *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 342–46 (E.D.Pa.1973), *Wood v. Breier,* 54 F.R.D. 7, 11–13 (E.D.Wis.1972). *See also* 2 J. Weinstein & M. Berger, *Weinstein's Evid.,* ¶¶ 509[05]–509[08], at 509–22 to 509–54 (1993); 26A C. Wright & K. Graham, *Fed.Prac. & Proc.: Evid.* §§ 5676–5681, at 101–89 (1992); 2 D. Louisell & C. Mueller, *Fed.Evid.,* §§ 228–232, at 986–1059 (rev. ed. 1985). *Cf. Association for Reduction of Violence v. Hall,* 734 F.2d 63, 65–67 (1st Cir. 1984) (procedure for assessing claims of governmental privilege).

---

2. I also note that the statute itself directs that records pertaining to the internal investigation of police officers' claimed use of excessive force, documents the plaintiff has specifically requested, are not confidential once that investigation is complete. 30–A M.R.S.A. §§ 2702(1)(B)(5); 2702(1–A). The defendants have not asserted that any such investigation, if one ever took place, is still ongoing.

## IV. Relevance

Apart from the claims of privilege, the defendants have also objected to the production of their personnel files (Request No. 4) and documents pertaining to other injuries resulting from high speed chases or road blocks (Request No. 19) on the grounds of relevancy under Rule 26 of the Federal Rules of Civil Procedure. Rule 26 states that a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party...." Fed.R.Civ.P. 26(b)(1). Relevancy for Rule 26 purposes is construed broadly to encompass "any matter that bears on ... any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). The information sought through discovery need not itself be admissible at trial so long as it is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

■ In this case, the plaintiff has asserted a § 1983 supervisory liability claim against Richard Lewsen, in his official capacity as the chief of the Windham Police Department. Plaintiff's Complaint ¶¶ 34–36. The plaintiff contends that Chief Lewsen failed to establish adequate procedures for engaging a fleeing suspect and failed to adequately train or supervise the arresting officers in the execution of high speed pursuits and the use of road blocks. *Id.* ¶ 34. Supervisory liability claims require a plaintiff to establish the supervisor's deliberate indifference to the constitutional rights of others and an affirmative link between the supervisor's conduct and the arresting officers' unconstitutional acts. *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581–82 (1st Cir.1994); *Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 91–93 (1st Cir.1994).

■ Unquestionably, documents relating to previous injuries resulting from high speed pursuits or road blocks of the Windham Police (Request No. 19) bear upon the plaintiff's claim of supervisory liability. Given the plaintiff's need to show that Chief Lewsen was put on notice of behavior of his subordinates that was likely to result in a constitutional violation in order to prove deliberate indifference on his part, *Maldonado–Denis,* 23 F.3d at 582–83; *Febus–Rodriguez,* 14 F.3d at 93, information relating to past similar incidents, or the absence of any such incidents, is highly relevant to the plaintiff's claim.

■ Similarly, the personnel files of the two arresting officers (Request No. 4) pertain to the plaintiff's claim of supervisory liability. The plaintiff's request specifically seeks documents relating to the officers' conduct as police officers, such as disciplinary reports, investigative reports and psychological test results. These documents are highly relevant to the plaintiff's claim that Chief Lewsen inadequately trained and supervised the two arresting officers, again given the plaintiff's need to show that the chief was put on notice as to the officers' past misconduct, if any, to prove deliberate indifference in his training and supervision of them. *Id.* As for Chief Lewsen's own personnel file, documents relating to his conduct as a police officer would also be directly relevant to the plaintiff's claim of supervisory liability, again to reveal the extent to which Chief Lewsen knew of the past misconduct of his subordinates, if at all. Accordingly, I find that the personnel files of the defendants are relevant and discoverable under the federal rules. *Accord Hampton v. City of San Diego,* 147 F.R.D. 227, 229 (S.D.Cal.1993); *Mueller v. Walker,* 124 F.R.D. 654, 657–59 (D.Or.1989); *Scouler v. Craig,* 116 F.R.D. 494, 496–97 (D.N.J.1987); *Skibo v. City of New York,* 109 F.R.D. 58, 62 (E.D.N.Y.1985).[3]

---

3. I note that the plaintiff has requested the entire personnel file of each defendant. I realize that not every document in these files would be relevant to the plaintiff's action. The defendants, however, have asserted a blanket relevance objection to the disclosure of their personnel files, not distinguishing any of the documents contained in them. In the absence of a designation as to particular documents contained in the files, I must overrule their objection, since the requested personnel files contain some information, supportive or not, that is germane to at least the plaintiff's supervisory liability claim against

## V. Possession, Custody or Control

 As a final argument against disclosure, the defendants assert that the documents requested by the plaintiff are not within their care, custody or control for discovery purposes, as required by Fed.R.Civ.P. 34(a). The defendants assert that the various documents—the personnel files, internal investigatory reports of the incident and records of past similar incidents—are all official records within the care, custody and control of the Town of Windham, a non-party, and not any of the defendants.[4]

 Rule 34(a) of the Federal Rules of Civil Procedure requires the production of requested documents "which are in the possession, custody or control of the party upon whom the request is served." Legal ownership or actual physical possession is not required; documents are considered to be under a party's "control" when that party has the right, authority or ability to obtain those documents upon demand. *See, e.g., Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir. 1984); *Comeau v. Rupp,* 810 F.Supp. 1127, 1166 (D.Kan.1992); *Scott v. Arex, Inc.,* 124 F.R.D. 39, 41 (D.Conn.1989); *Haseotes v. Abacab Int'l Computers, Inc.,* 120 F.R.D. 12, 15 (D.Mass.1988). Critical to a finding of "control" in this case is the fact that the plaintiff has sued defendant Lewsen in his official capacity as the chief of the Windham Police Department. As head of the police department, defendant Lewsen is most likely the municipal official charged with the ultimate responsibility for maintaining the police records. *Cf.* 30-A M.R.S.A. § 2702(2) (referring to "the municipal official with custody of the records"). In his official capacity, therefore, defendant Lewsen certainly has the legal authority to obtain and produce the various police records, as requested by the plaintiff.

### VI. Conclusion

For the foregoing reasons, I conclude that the police records requested by the plaintiff, not being privileged and being relevant to the plaintiff's action, must be produced. The motion to compel is therefore **GRANTED.** Defendant Lewsen, in his official capacity as the chief of the Windham Police Department, is the party in whose control those documents reside. Accordingly, defendant Lewsen is ordered to produce the requested documents, subject to a protective order to ensure public nondisclosure in accordance with 30-A M.R.S.A. § 2702. The parties shall forthwith endeavor in good faith to agree on and submit to the court a jointly proposed protective order or, in the absence of such agreement, their separate proposals.

**SO ORDERED.**

---

Chief Lewsen. *See Hampton,* 147 F.R.D. at 229–30.

**4.** I note that the defendants did not raise such an objection in their response to the plaintiff's re-quest for documents, as required by Fed.R.Civ.P. 34(b), but first raised it in their response to the plaintiff's motion to compel.